E. Glenn McMILLAN, Appellant,

v.

NORTHWEST HARRIS COUNTY MU-
NICIPAL UTILITY DISTRICT
NO. 24, Appellee.

No. 01–97–01420–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 18, 1999.

Willis Witt, Houston, for Appellant.

J. Ron Young, Alan D. Andrews, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices O'CONNOR and TAFT.

## OPINION

MICHOL O'CONNOR, Justice.

E. Glenn McMillan, the appellant here and plaintiff below, appeals a summary judgment rendered in favor of Northwest Harris County Municipal Utility District No. 24 (the MUD 24), the appellee here and defendant below. We affirm.

### Background Facts

In 1996, the Texas Natural Resource Conservation Commission (TNRCC) authorized MUD 24 to impose standby fees [1] for the years 1996 to 1998 against all eligible undeveloped land within MUD 24's boundaries, including McMillan's land.

MUD 24 sued McMillan to collect the delinquent fees for 1996. McMillan sued MUD

1. A "standby fee" is a charge, other than a tax, imposed on undeveloped property for the availability of potable water, sanitary sewer, or drainage facilities and services. Tex. Water Code § 49.231(a)(1).

24 in a separate lawsuit to block the levy of the standby fees. McMillan asserted the levy of standby fees against his property constituted a taking prohibited by the Texas Takings Act[2] because the fees reduced the market value of his land by at least 25 percent.[3] The two lawsuits were consolidated. In March 1997, the trial court rendered partial summary judgment in MUD 24's favor for the 1996 fees. In September 1997, the trial court rendered final summary judgment for MUD 24, denying McMillan's claims and defenses. This appeal followed.

### Summary Judgment Grounds

■ Summary judgment is proper when a defendant establishes, as a matter of law, there are no issues of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Pena v. Van*, 960 S.W.2d 101, 103 (Tex.App.—Houston [1st Dist.] 1997, pet. filed). We will consider all summary judgment grounds on which the trial court rules, and which appellant preserves for appellate review, that are necessary for final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996). We will affirm the summary judgment if any of the theories advanced in the motion for summary judgment is meritorious. *Id.* We will not consider any ground for reversal that was not expressly presented to the trial court by written motion, answer, or other response to the motion for summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979); *Pena*, 960 S.W.2d at 103.

MUD 24 moved for summary judgment on the grounds that the Takings Act did not apply to its levy of standby fees because such action fell within one or more of the exceptions to the Takings Act, McMillan's claims were an impermissible collateral attack on the TNRCC's order approving standby fees and were barred by the doctrines of collateral estoppel and res judicata, and the levy of standby fees did not constitute a taking under either the United States or Texas Constitutions. The trial court did not specify upon what basis it rendered judgment for MUD 24.

### Texas Takings Act

■ In point of error one, McMillan asserts summary judgment was improper because whether the levy of standby fees constitutes a "taking" is a question of fact.

McMillan contends that MUD 24's levy of standby fees falls within the scope of the Takings Act, which applies to "an action that imposes a physical invasion or requires a dedication or *exaction of private real property*." Tex. Gov't Code § 2007.003(a)(2) (emphasis added). McMillan contends MUD 24's levy of standby fees is an "exaction of private real property" and whether such action results in a "taking" is a question of fact under the Takings Act. *Id.* § 2007.023.[4]

The Takings Act defines a "taking" as a governmental action that:

(i) affects an owner's private real property that is the subject of the governmental action, in whole or in part or temporarily or permanently, in a manner that restricts or limits the owner's right to the property that would otherwise exist in the absence of the governmental action; and

(ii) is the producing cause of a reduction of at least 25 percent in the market value of the affected private real property, determined by comparing the market value of the property as if the governmental action is not in effect and the market value of the

---

**2.** *See* Tex. Gov't Code § 2007.002(5)(B)(i),(ii).

**3.** The appellant contends his property's value of approximately $611,000 was reduced by standby fees totaling $240,000.

**4.** The Takings Act provides as follows:
 (a) Whether a governmental action results in a taking is a question of fact.

(b) If the trier of fact in a suit or contested case filed under this subchapter finds that the governmental action is a taking under this chapter, the private real property owner is only entitled to, and the governmental entity is only liable for, invalidation of the governmental action or the part of the governmental action resulting in the taking.
Tex. Gov't Code § 2007.023(a), (b).

property determined as if the governmental action is in effect.

*Id.* § 2007.002(5)(B)(i),(ii).

McMillan asserts the levy of standby fees reduced the value of his property by 25 percent. MUD 24 asserts that the levy of standby fees against McMillan's land is not a "taking" within the scope of the Takings Act because the Act does not apply to the following:

(4) an action, including an action of a political subdivision, that is reasonably taken to fulfill an obligation mandated by federal law or an action of a political subdivision that is reasonably taken to fulfill an obligation mandated by state law;

(5) the discontinuance or modification of a program or regulation that provides a unilateral expectation that does not rise to the level of a recognized interest in private real property;....

(13) an action that:

(A) is taken in response to a real and substantial threat to public health and safety;

(B) is designed to significantly advance the health and safety purpose; and

(C) does not impose a greater burden than is necessary to achieve the health and safety purpose;....

Tex. Gov't Code § 2007.003(b)(4), (5), (13).

We agree with MUD 24 that its levy of standby fees was not within the scope of the Takings Act because the levy was an action of a political subdivision that was reasonably taken to fulfill an obligation mandated by state law. *See id.* § 2007.003(b)(4).

### 1. Obligations mandated by State law

Municipal utility districts (MUDs), such as MUD 24, are created under the authority of the Texas Constitution. *See* Tex. Const. art. 16, § 59(a), (b) (authorizing creation of conservation and reclamation districts as necessary to conserve and develop State natural resources); *see also* Tex. Water Code § 54.011 (authorizing creation of MUDs); *Monsanto Co. v. Cornerstones MUD,* 865 S.W.2d 937, 940 n. 4 (Tex.1993) (MUDs are created pursuant to constitutional provision).

A MUD may be created for the following purposes:

(1) the control, storage, preservation, and distribution of its storm water and floodwater, the water of its rivers and streams for irrigation, power, and all other useful purposes;

(2) the reclamation and irrigation of its arid, semiarid, and other land needing irrigation;

(3) the reclamation and drainage of its overflowed land and other land needing drainage;

(4) the conservation and development of its forests, water, and hydroelectric power;

(5) the navigation of its inland and coastal water;

(6) the control, abatement, and change of any shortage or harmful excess of water;

(7) the protection, preservation, and restoration of the purity and sanitary condition of water within the state; and

(8) the preservation of all natural resources of the state.

Tex. Water Code § 54.012; *see also Harris County Water Control & Improvement Dist. No. 110 v. Texas Water Rights Comm'n,* 593 S.W.2d 852, 854 (Tex.Civ.App.—Austin 1980, no writ) (water and utility districts created to protect and preserve natural resources of this State).

MUD 24 was created pursuant to an order of the Texas Water Commission in 1982 for the purpose of constructing, operating, and maintaining a water and sanitary sewer and disposal plant and drainage system. *See* Tex. Water Code § 54.012. MUD 24 was obligated and empowered to accomplish the purpose for which it was created, including the purchase and operation of facilities necessary to supply water; collect, transport, process, and dispose of waste; and gather and control storm waters. *See* Tex. Water Code § 54.201(a), (b) (powers and duties of municipal utility districts); *see also id.* § 49.211 (general powers and duties of all districts created by authority of Tex. Const. art. 16, § 59).

MUD 24 is a political subdivision of the State of Texas, created pursuant to article

16, section 59 of the Texas Constitution. *Brubaker v. Brookshire Mun. Water Dist.,* 808 S.W.2d 129, 131 (Tex.App.—Houston [14th Dist.] 1991, no writ). As a political subdivision of the State, MUD 24 operates as a governmental agency performing governmental functions. *Clear Lake City Water Authority v. Clear Lake Utilities Co.,* 549 S.W.2d 385, 391 (Tex.1977); *Brubaker,* 808 S.W.2d at 131; *see also* Tex. Civ. Prac. & Rem.Code § 101.0215(a) (governmental functions are "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public[.]").

MUD 24 could not, by contract or otherwise, bind itself in such a way as to restrict its free exercise of its governmental powers, nor could it abdicate its governmental functions, even for a "reasonable time." *Clear Lake,* 549 S.W.2d at 391. When discharging its governmental functions, MUD 24, as an agent of the State, is exercising the State's police power, which is a grant of authority from the people to the government for the protection of the health, safety, comfort, and welfare of the public. *Galveston County MUD No. 3 v. League City,* 960 S.W.2d 875, 877 (Tex.App.—Houston [14th Dist.] 1997, no writ) (operation of sewer system by municipality is exercise of governmental function). Therefore, we hold that MUD 24's functions are governmental functions mandated by Texas law. *See Hydrocarbon Prod. Co. v. Valley Acres Water Dist.,* 204 F.2d 212, 217 (5th Cir.1953) (holding that provisions of Texas Constitution article 16, section 59 are a mandate declaring the Texas's policy regarding drainage and irrigation).

Because we find that MUD 24's functions are mandated by Texas law, we next consider whether the levy of standby fees was an action reasonably taken to fulfill those functions.

**2. Standby Fees**

The Texas Constitution authorizes MUDs to incur debt. *See* Tex. Const. art. 16, § 59(c). The Water Code authorizes a MUD to issue bonds to accomplish the purposes for which it was created. *See* Tex. Water Code §§ 49.181–.186, 54.501. MUD 24 issued bonds to purchase, construct, acquire, own, operate, repair, improve, and extend a water and sanitary sewer disposal plant and a drainage system. The terms of MUD 24's bonds are set forth in its bond orders. The Attorney General approved MUD 24's series 1983 bonds in November 1983 and its series 1984 bonds in November 1984. *See id.* § 49.184(a), (b) (requiring approval of bonds by Attorney General). Among the terms in the bond orders is MUD 24's obligation to repay the bonds.

A MUD may adopt and enforce all necessary charges, fees, or rentals, in addition to taxes, for providing or making available any district facility or service. *See id.* § 49.212(a). Standby fees may be imposed under the following circumstances:

A district that proposes to provide or actually provides retail potable water or sewer utility services, or drainage services as the principal function of the district, may, with the approval of the commission, adopt and impose on the owners of undeveloped property in the district a standby fee in addition to taxes levied by the district. A district may not impose a standby fee for debt service purposes on undeveloped property unless the facilities and services available to the property have been financed by the district; however, a district may impose a standby fee for operating and maintaining facilities that it has not financed. The district may impose standby fees in different amounts to fairly reflect the level and type of services and facilities available to serve different property. *The intent of the standby fee is to distribute a fair portion of the cost burden for operating and maintaining the facilities and for financing capital costs of the facilities to owners of property who have not constructed improvements but have potable water, sewer, or drainage capacity available. Any revenues collected from the standby fees shall be used to pay operation and maintenance expenses, to pay debt service on the bonds, or both.*

*Id.* § 49.231(b) (emphasis added).

In 1996 and 1997, the TNRCC approved the standby fees imposed by MUD 24 on

McMillan. *Id.* § 49.231(b), (c), (f), (g) (requiring approval by TNRCC of standby fee applications). MUD 24 had the authority to impose standby fees on McMillan's undeveloped property [5] in order to finance the services it was created to provide to landowners such as McMillan. *See id.* § 49.231(b).

We hold that MUD 24's levy of standby fees was "an action of a political subdivision that [was] reasonably taken to fulfill an obligation mandated by state law." *See* Tex. Gov't Code § 2007.003(b)(4). Accordingly, the Takings Act does not apply to MUD 24's imposition of standby fees.

We overrule point of error one.

### Constitutional Taking

Although the Takings Act does not apply in this situation, we must still decide whether the levy of standby fees constitutes a compensable taking under either the United States or Texas Constitutions. We, therefore, next address McMillan's point of error four.

### 1. Taking under United States Constitution

■ The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides as follows: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. 5. One of the purposes of the Takings Clause is to prevent the government from forcing some people to bear public burdens that, in all fairness and justice, should be borne by the public as a whole. *Dolan v. Tigard*, 512 U.S. 374, 383–84, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304 (1994).

■ Whether there has been a taking is a question of law. *Mayhew v. Sunnyvale*, 964 S.W.2d 922, 932, 936 (Tex.1998) (whether zoning ordinance constituted compensable taking); *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996) (whether property owners could seek

compensation for diminution in value of property caused by impaired access after receiving compensation for value of land taken). Although no precise rule determines when property has been taken, the question necessarily requires a weighing of private and public interests. *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

■ Under the Takings Clause, a physically nonintrusive governmental action may result in the taking of private real property if it does not substantially advance legitimate state interests or denies an owner economically viable use of his land. *Dolan*, 512 U.S. at 383, 385, 114 S.Ct. at 2316 (whether land-use condition that also required property owner to deed portion of her land to city in exchange for permit was a taking); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677 (1987) (whether conditioning issuance of land-use permit on conveyance of land constituted a taking); *Agins*, 447 U.S. at 260, 100 S.Ct. at 2141 (whether mere enactment of zoning ordinance was a taking).

On appeal, McMillan does not assert the levy of the standby fees does not substantially advance a legitimate state interest. We interpret his complaint as asserting that the levy of the standby fees against his property deprives him of the economically viable use of his land because the standby fees either decrease or entirely destroy his ability to recognize the full market value of his land if he were to sell it. However, the United States Supreme Court has uniformly rejected the proposition that diminution in property value, standing alone, establishes a "taking." *See Penn Central Transp. Co. v. New York*, 438 U.S. 104, 131 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 (1978) and cases cited therein. Therefore, MUD 24's levy of standby fees against McMillan's property does not constitute a taking under the United States Constitution.

---

5. "Undeveloped property" means a tract, lot, or reserve in the district to which no potable water, sanitary sewer, or drainage connections have been made for which (1) water, sanitary sewer, or drainage facilities and services are available; (2) water supply, wastewater treatment plant capacity, or drainage capacity sufficient to serve the property is available; or (3) major water supply lines, wastewater collection lines, or drainage facilities with capacity sufficient to serve the property are available. *Id.* § 49.231(a)(2).

### 2. Taking under Texas Constitution

 Article one, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made...." To recover under article one, section 17, a plaintiff must show that the government's intentional acts resulted in a taking of the plaintiff's property for public use. *Woodson Lumber Co. v. College Station*, 752 S.W.2d 744, 746 (Tex.App.—Houston [1st Dist.] 1988, no writ) (plaintiff asserted city's refusal to approve higher density plats deprived it of opportunity to sell property when there was an active market and that refusal amounted to a compensable taking). Although an actual taking or physical invasion of property is not required under the Texas Constitution before a landowner may be entitled to damages for the taking or damaging of his property, not every decrease in market value is compensable. *Felts v. Harris County*, 915 S.W.2d 482, 484 (Tex.1996) (land owners asserted taking because traffic noise would damage their property differently from how it would damage other properties in their neighborhood; holding: no taking because Felts's damages same as those experienced by their neighbors). Recovery under article one, section 17 is permitted only if the injury is not one suffered by the community in general. *Felts*, 915 S.W.2d at 484. Injuries to property received or sustained in common with the community in which the property is situated, and resulting from the operation of a public work, are community in nature. *Id.* at 485. Community damages are not connected with the landowner's use and enjoyment of property and give rise to no compensation. *Id.*

McMillan does not contend that he alone bears the burden of paying standby fees or that the levy of the fees is not community in nature. Nor does he contend that only his property's value has been damaged by the levy. Instead, McMillan asserts the standby fees benefit only MUD 24 and he receives nothing by reason of his payment of the fees except the destruction of his property's value. However, a *potential* decrease in market value does not constitute an actual physical appropriation or invasion of property or an unreasonable interference with McMillan's use or enjoyment of his property. *See Westgate Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992) (no compensable taking even though damage suffered by landowner resulted from decline in marketability of property caused by government's proposal to condemn in future); *Allen v. Texas City*, 775 S.W.2d 863, 865 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (no compensable taking although construction of levee diminished market value by 50 percent). Therefore, MUD 24's levy of standby fees against McMillan's property does not constitute a taking under the Texas Constitution.

 McMillan also asserts his land does not have the benefit of the services provided by MUD 24. Other than this conclusory assertion, McMillan has not included any citation of authority or discussion of the facts to support this contention. *See* Tex. R.App. P. 38.1(h). McMillan does not provide us with argument that is sufficient to make his appellate complaint viable, and we will not perform an independent review of the record and applicable law to determine whether the complained of error occurred. *Maranatha Temple, Inc. v. Enterprise Prod. Co.*, 893 S.W.2d 92, 106 (Tex.App.—Houston [1st Dist.] 1994, writ denied). We will not do the job of the advocate. *Id.* McMillan has waived this contention on appeal by not citing any supporting authority. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983); *Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 887 (Tex.App.—Houston [1st Dist.] 1995, no writ).

We overrule point of error four.

Because we overrule points of error one and four, we need not address McMillan's remaining points of error.

We affirm the trial court's judgment.