EDWARDS AQUIFER AUTHORITY and Gregory Ellis, General Manager of the Edwards Aquifer Authority, Appellants,

v.

Glenn BRAGG and Jolynn Bragg, Appellees.

No. 04–99–00059–CV.

Court of Appeals of Texas, San Antonio.

Jan. 19, 2000.

Rehearing Overruled March 20, 2000.

**376**

Darcy Alan Frownfelter, Andrew S. Miller, Kemp, Smith, Duncan & Hammond, P.C., Austin, for appellant.

Paul M. Terrill, III, Vincent L. Hazen & Terrill, P.C., Austin, for appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: SARAH B. DUNCAN, Justice.

The Edwards Aquifer Authority and its general manager, Gregory Ellis, appeal the trial court's judgment declaring certain of the EAA's actions and proposed actions void because the EAA failed to perform "takings impact assessments" pursuant to the Private Real Property Rights Preservation Act. We hold the trial court did not have jurisdiction to invalidate the EAA's proposed actions, and it erred in concluding the EAA was required to perform takings impact assessments before promulgating rules and proposing action on the Braggs' permit applications. We therefore vacate the trial court's judgment in part, reverse it in part, and render judgment in favor of the EAA and Ellis.

FACTUAL AND PROCEDURAL BACKGROUND

### The Edwards Aquifer and the EAA

The Edwards Aquifer "is a unique underground system of water-bearing formations in Central Texas" and "the primary source of water for residents of the south central part of this state." *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 623 (Tex. 1996). However, the Aquifer is not only vital to area residents; it is also critical to the region's terrestrial and aquatic wildlife. Thus, in 1991, a federal district court required the State of Texas to adopt a regulatory system to limit withdrawals from the Aquifer to the extent necessary "to avoid unlawful takings of listed species, jeopardy to any listed species, and destruction or adverse modification of critical habitat of any listed species." *Sierra Club v. Lujan,* No. MO–91–CA–069, 1993 WL 151353, at *34 (W.D.Tex. Feb. 1, 1993).

In accordance with the federal court's order and as authorized by article XVI, section 59 of the Texas Constitution,[1] the Texas Legislature enacted the Edwards Aquifer Act.[2] Under the Act, "the amount of permitted withdrawals from the aquifer" is limited to "450,000 acre-feet of water for each calendar year" for the period ending December 31, 2007, Edwards Aquifer Act § 1.14(b), unless the EAA increases the cap after determining that additional water is available. *Id.* § 1.14(d). In either event, no one may withdraw significant quantities of water from the Aquifer without first obtaining a permit from the EAA. *Id.* § 1.15(b).[3] The Act thus specifically charges the EAA with the responsibility to ensure compliance with the permitting, metering, and reporting requirements of the Act, *id.* § 1.11(b), and it expressly provides that action taken pursuant to the Act "may not be construed as depriving or divesting the owner[s] ... of [their] ownership rights" in underground water. *Id.* § 1.07.

Under the express terms of the Act, the EAA may issue three types of permits: (1) emergency permits, which are available only to prevent loss of life and severe, imminent threats to public health and safety, *id.* § 1.20; (2) term permits, which are also severely restricted, *id.* § 1.19; and (3) regular permits, *id.* § 1.15(c), which in-

1. Article XVI, section 59 provides in relevant part:

   (a) The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.
   (b) There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitu-

tion, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law.
TEX. CONST. art. XVI, § 59(a), (b).

2. *See* Act of May 30, 1993, 73d Leg., R.S., ch. 626, 1993 Tex. Gen. Laws 2350, *amended by* Act of May 29, 1995, 74th Leg., R.S., ch. 261, 1995 Tex. Gen. Laws 2505, *and* Act of May 16, 1995, 74th Leg., R.S., ch. 524, 1995 Tex. Gen. Laws 3280, *and* Act of May 6, 1999, 76th Leg., R.S., ch. 163, 1999 Tex. Gen. Laws 634 [hereinafter Edwards Aquifer Act].

3. There are two exceptions to this rule. First, a permit applicant may withdraw aquifer water without a permit between the effective date of the Act and the date the EAA takes final action on the permit application. Edwards Aquifer Act § 1.17. Second, a permit is not required for wells producing 25,000 gallons of water a day or less for domestic or livestock use. *Id.* § 1.33.

clude initial regular permits and additional regular permits. *Id.* §§ 1.16, 1.18. An initial regular permit is available if the well for which the permit is sought was drilled before June 1, 1993, *id.* §§ 1.14(e), 1.18, and the applicant establishes it withdrew and beneficially used Aquifer water during the "historical period," which is statutorily defined as June 1, 1972 through May 31, 1993. *Id.* § 1.16(a), (d). If beneficial use during the historical period is established, the applicant is entitled to "a permit for withdrawal of an amount of water equal to the user's maximum beneficial use of water without waste during any one calendar year of the historical period" but only "[t]o the extent water is available for permitting." *Id.* § 1.16(e). The EAA is thus authorized to proportionately adjust all users' authorized withdrawals if they cumulatively exceed the Aquifer cap. *Id.* Even then, however, existing irrigators are guaranteed no less than two acre-feet of water per year for each acre of land actually irrigated during any calendar year during the historical period. *Id.* And existing users who operated their wells for more than three years during the historical period are guaranteed no less than the average amount of water withdrawn annually during the historical period. *Id.* After the issuance of all initial regular permits, the EAA may issue additional regular permits. *Id.* § 1.18. Only then may the EAA consider a permit application by a person who has no historical use or for a well that has not been beneficially used before June 1, 1993. *Id.*

"[T]o carry out [its] powers and duties under [the Act]," the EAA is authorized to adopt whatever rules are necessary, "including rules governing procedures of the board and authority." *Id.* § 1.11(a). The EAA thus adopted rules establishing a permit program. See 31 TEX. ADMIN. CODE chs. 701, 703 (Definitions), 705 (Substantive Groundwater Withdrawal Permit Rules), 707 (Procedural Groundwater Withdrawal Permit Rules) (1998). Under these rules, "cap" is defined as the amount of water authorized for withdrawal by the

EAA, not to exceed 450,000 acre-feet per year for the period between June 28, 1996 and December 31, 2007. *Id.* § 703.1. Like the Act, the EAA's definition of "cap" allows for the possibility of an adjustment. *Id.* However, no such adjustment is indicated in the rules. *Id.* The rules also track the Act's language in delineating when initial regular permits may be issued and in what amount. Id. §§ 705.67(e)-(i); 705.77.

The EAA also promulgated forms for permit applications and historical use declarations. The declaration-of-historical-use form requires the applicant to list withdrawals for each year during the statutorily-defined historical use period (June 1, 1972 through May 31, 1993). The first and last blank lines thus require the applicant to report partial annual withdrawals, *i.e.,* June 1, 1972 through December 31, 1972 and January 1, 1993 through May 31, 1993.

### The Braggs

In December 1996, Glenn and Jolynn Bragg applied for permits to withdraw Aquifer water from wells in their D'Hanis and Home Place pecan orchards. In their historical use declaration for the D'Hanis Orchard, the Braggs reported that although they currently irrigated forty-two acres, they had no withdrawals during the June 1, 1972–May 31, 1993 historical use period. On their Home Place Orchard permit application, the Braggs indicated they had been pumping Aquifer water from a well in this orchard since 1980, the total amount of irrigated land was 56.6 acres, and the maximum withdrawal between 1980 and 1992 was 60.41 acre-feet in 1991. However, the Braggs reported they withdrew over twice as much (138.46 acre-feet) from the Home Place Orchard well for the period January 1, 1993 to May 31, 1993. In light of this discrepancy, the EAA determined the Braggs had mistakenly reported a full year of withdrawals for 1993 and thus reduced the reported 1993 maximum withdrawal by half. Similarly,

the EAA disregarded the Braggs' reports of their annual withdrawals from both wells after the expiration of the historical period (1994–1996). As a result, the EAA concluded the Braggs had shown no historical use on the D'Hanis Orchard application, and all of the Braggs' withdrawals from the Home Place Orchard well during the historical use period were less than the irrigator minimum. Accordingly, the EAA's general manager, Gregory Ellis, recommended: (1) denying the Braggs' application for a permit to withdraw water from the D'Hanis Orchard well, and (2) granting the Braggs' application for an initial regular permit to withdraw water from the Home Place Orchard well based on the guaranteed irrigator minimum (113.2 acre-feet per year—2 acre feet of water for each of the 56.6 acres irrigated).

Before the EAA's Board of Directors could act on Ellis' recommendations, the Braggs filed suit, seeking a judgment invalidating (1) the EAA's adoption of administrative rules, regulatory requirements, policies, and guidelines for the well permitting process and (2) Ellis's recommended action on the Braggs' permit applications because the EAA was required and failed to perform "takings impact assessments" (TIAs) under Texas' Private Real Property Rights Preservation Act. *See* TEX. GOV'T CODE ANN. § 2007.044(a) (Vernon 1999). The EAA answered, contending TIAs were not required because the complained-of "actions" were not covered or were excepted from the requirements of the Property Rights Act. *See id.* § 2007.003(b)(4), .003(b)(6), .003(b)(11)(C), .003(b)(13).

At the ensuing bench trial, the parties stipulated to the material facts set forth above and reflected in their joint exhibits, and they further agreed the EAA is a political subdivision subject to the Property Rights Act. *Id.* § 2007.002(1)(B); *see* Edwards Aquifer Act § 1.02; *Clear Lake City Water Auth. v. Clear Lake Util. Co.,* 549 S.W.2d 385, 391 (Tex.1977); *Lake LBJ Mun. Util. Dist. v. Coulson,* 839 S.W.2d

880, 893 (Tex.App.—Austin 1992, no writ). Also admitted into evidence was the testimony of Glenn Bragg, Gregory Ellis, and Steven Walthour, EAA's field services manager. Ultimately, the trial court rendered judgment declaring "EAA and Ellis' proposed government action" on the Braggs' permit applications, as well as the EAA's well permitting rules, "void and of no force and effect by virtue of the [ ] failure to perform a Takings Impact Assessment." The EAA and Ellis appeal, arguing the promulgation of rules and the proposed action on the Braggs' permit applications were mandated by state law and therefore exempt from the TIA requirement.

## STANDARD OF REVIEW

■ The facts underlying the trial court's legal conclusions are not in dispute. Rather, the EAA contends the trial court erred in interpreting and applying the Property Rights Act. We review questions of law, such as the interpretation and application of a statute, de novo. *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 437 (Tex.1997); *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex. App.—San Antonio 1996, no writ).

## ADOPTION OF PERMITTING RULES

■ The EAA contends the Edwards Aquifer Act expressly mandates its adoption of substantive and procedural permitting rules generally, as well as the rules it in fact adopted and applied in considering the Braggs' permit applications, and these actions are thus excepted from operation of the Property Rights Act. We agree.

■ When interpreting statutory provisions, "our objective is to determine and give effect to the Legislature's intent." *Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 960 (Tex.1999) (per curiam). Therefore, to resolve whether a statutory provision is intended "to be mandatory or directory, we consider the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences

that would follow from each construction." *Id.* at 961. "[U]nless legislative intent suggests otherwise," "[w]e generally construe the word 'shall' as mandatory." *Id.*

By its terms, the Property Rights Act excludes from its operation "an action of a political subdivision that is reasonably taken to fulfill an obligation mandated by state law." TEX. GOV'T CODE ANN. § 2007.003(b)(4). And the Edwards Aquifer Act provides the EAA's Board of Directors "shall adopt rules necessary to carry out the authority's powers and duties under this article, including rules governing procedures of the board and authority." Edwards Aquifer Act, § 1.11(a); *see id.* § 1.11(b) (stating the EAA "shall ensure compliance with permitting ... requirements and shall regulate permits"). Thus, the plain language of the relevant statutory provisions excludes the EAA's rulemaking from operation of the Property Rights Act. The Braggs argue, however, this construction renders meaningless section 2007.003(a)(1) of the Property Rights Act, which expressly provides the Act applies to the adoption of a rule. *See* TEX. GOV'T CODE ANN. § 2007.003(a)(1). We disagree. Under our interpretation, the statute covers rulemaking by governmental entities in general but also provides an exception for rulemaking performed by political subdivisions pursuant to a state law mandate. *See id.* § 2007.003(a)(1); § 2007.002(1) (distinguishing between political subdivisions and a state "board, commission, council, department, or other agency"); § 2007.003(b)(4) ("mandated by state law" exception applies only to political subdivisions).

In accordance with the plain language of the Property Rights Act and the Edwards Aquifer Act, we hold the EAA's adoption of permitting rules generally and the rules applied to the Braggs' applications in particular were mandated by state law and thus outside the ambit of the Property Rights Act. No other result is possible since the rules track the Edwards Aquifer Act. *See and compare* Edwards Aquifer

Act, §§ 1.14(b), 1.14(d), 1.16, 1.18, *with* 31 TEX. ADMIN. CODE §§ 703.1, 705.67, 705.69, 705.77. We therefore reverse this aspect of the trial court's judgment and render judgment in favor of Ellis and the EAA.

### PROPOSED ACTION ON THE BRAGGS' PERMIT APPLICATIONS

■ The EAA also contends its proposed action on the Braggs' permit applications is mandated by state law and thus excepted from operation of the Property Rights Act. However, we conclude the Braggs' claim seeking to invalidate the EAA's *proposed* action on their permit applications is not ripe for adjudication.

■ The ripeness doctrine generally precludes judicial review of an administrative action that is not final. *In re Continental Airlines Corp.*, 50 B.R. 342, 362 (S.D.Tex.1985), *aff'd*, 790 F.2d 35 (5th Cir. 1986). The doctrine is designed "(1) to avoid prematurely interrupting [agency] proceedings; (2) to promote judicial economy; (3) to sustain respect for the [agency's] administrative process; and (4) to protect the [agency's] autonomy." *Id.* at 364. "For an agency's action to be 'final' in ripeness parlance, a court's review of that action must not unduly defeat [the doctrine's] purposes. In short, the agency's action must be 'definitive' and have a 'direct and immediate effect on the [plaintiff's] day to day business." *Id.* at 364 (quoting *Chicago Truck Drivers, Helpers and Warehouse Workers Union v. National Mediation Bd.*, 670 F.2d 665, 668 & n. 5 (7th Cir.1981)). Because "[r]ipeness is an element of subject matter jurisdiction," it presents "a legal question subject to de novo review that a court can raise sua sponte." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998).

Under the Property Rights Act, a covered governmental entity is required to prepare a TIA for "a *proposed* governmental action described in Section 2007.003(a)(1) through (3)." TEX. GOV'T CODE ANN. § 2007.043(a) (emphasis added). However, the Act does not provide for

judicial review for failing to perform a TIA until the governmental entity acts. *See id.* § 2007.044(a). Only then may "[a] private real property owner affected by a governmental action taken without the preparation of a takings impact assessment ... bring suit for a declaration of the invalidity of the governmental action." *Id.* In short, the Property Rights Act creates a cause of action for judicial review of governmental action; it does not provide for judicial review of proposed action. The Act thus did not confer subject matter jurisdiction to review the Braggs' claim seeking to invalidate the EAA's proposed action on their permit applications.

Both parties urge us to dispense with the ripeness requirement because the EAA has unequivocally stated it will act in conformity with Ellis' recommendations without performing a TIA. We appreciate the parties' desire for a speedy resolution of the issues presented. However, we cannot permit judicial review of the EAA's proposed action in this case without also setting the stage for premature review in later cases. *See In re Continental Airlines Corp.*, 50 B.R. at 363–64 (discussing the purposes underlying the ripeness doctrine in the administrative context). This is a course we are not willing to pursue. Therefore, we hold the Property Rights Act does not confer subject matter jurisdiction to review proposed action, and the trial court erred in concluding otherwise. We thus vacate the trial court's judgment insofar as it purports to invalidate the EAA's proposed action on the Braggs' permit applications.

### Declaratory Relief

▆▆▆▆ Although we believe the Braggs' attempt to invalidate the EAA's proposed action is premature, we recognize the futility of a remand in these circumstances. We therefore exercise our

discretion to construe the Braggs' pleadings as containing an implicit request for a declaratory judgment establishing that the EAA is required to perform a TIA before acting on their permit applications—declaratory relief the trial court's judgment implicitly grants. *See 46933, Inc. v. Z & B Enters.*, 899 S.W.2d 800, 808 (Tex.App.—Amarillo 1995, writ denied); *Canales v. Zapatero*, 773 S.W.2d 659, 661 (Tex.App.—San Antonio 1989, writ denied).

As discussed above, the Braggs concede the D'Hanis Orchard well was not drilled before June 1, 1993, and the plain language of the Edwards Aquifer Act provides the EAA "may not allow withdrawals from the aquifer through wells drilled after June 1, 1993, except additional water as provided by Subsection (d) and then on an interruptible basis." Edwards Aquifer Act, § 1.14(e); *see also id.* § 1.18(b). The equally plain language of the Property Rights Act excludes from its operation "an action ... that is reasonably taken to fulfill an obligation mandated by state law." TEX. GOV'T CODE ANN. § 2007.003(b)(4). Thus, because state law mandates the EAA's denial of the Braggs' application of a permit to withdraw water from the D'Hanis Orchard well, the Property Rights Act does not apply and a TIA is not required. The same is true with respect to the Braggs' application to withdraw water from their Home Place Orchard because the Edwards Aquifer Act requires the EAA to grant the Braggs' application to withdraw Aquifer water from the Home Place Orchard well based upon the irrigator minimum.[4] *See* Edwards Aquifer Act § 1.16(a), (e); *McMillan v. Northwest Harris County Mun. Util. Dist. No. 24*, 988 S.W.2d 337, 340–42 (Tex.App.—Houston [1st Dist.] 1999, pet. denied).

### CONCLUSION

Because the Property Rights Act does not confer a cause of action until a covered

---

4. The Braggs would have been entitled to the irrigator minimum even if the EAA had not reduced the Braggs' reported 1993 withdrawal by half. Even if the EAA had used the Braggs' figure, it would have been required to

proportionately adjust this number downward since the total reported amount of beneficial use exceeded the cap by approximately 110,-000 acre-feet. Edwards Aquifer Act § 1.16(e).

governmental entity acts, the trial court did not have subject matter jurisdiction to invalidate the Edwards Aquifer Authority's proposed action on the Braggs' permit applications. We therefore vacate the trial court's judgment to this extent. In all other respects, we reverse the trial court's judgment and render judgment that the Braggs take nothing. State law mandates the EAA's adoption of its rules and its proposed actions on the Braggs' permit applications. Therefore, these actions are not subject to the Property Rights Act, and takings impact assessments are not required.