# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00073-CV

**American Southwest Insurance Managers, Inc. and Old American County
Mutual Fire Insurance Company, Appellants**

**v.**

**Texas Department of Insurance and Mike Geeslin, Individually and
in his Official Capacity as Texas Commissioner of Insurance, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GN-09-003085, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

American Southwest Insurance Managers, Inc. ("ASIM") filed suit in district court to challenge the findings of an examination report commissioned by the Texas Department of Insurance ("the Department"). After the suit was filed, Old American County Mutual Fire Insurance Company ("Old American") sought to intervene. The Department filed a plea to the jurisdiction regarding the claims of ASIM and Old American and a motion to strike Old American's intervention. The trial court granted the motions. ASIM now appeals, arguing that the trial court erred in granting the Department's plea to the jurisdiction and asserting that its claims are not barred by sovereign immunity and are ripe for adjudication. Old American also appeals, arguing that the trial court erred in striking its intervention and granting the Department's plea to the jurisdiction. We will affirm the judgment of the trial court.

**BACKGROUND**

ASIM, as a licensee of the Department, is subject to financial examination by the Department under the insurance code. *See* Tex. Ins. Code Ann. § 4053.107 (West Supp. 2009). As authorized under statute, in 2009 the Texas Commissioner of Insurance ("the Commissioner") appointed an examiner to investigate ASIM. *Id.* (indicating that examinations may be conducted by "one or more commissioned examiners"). The report filed by the examiner determined that ASIM's practices regarding payment and cancellation notices were in violation of the administrative and insurance codes.[1] In addition, the examination report indicated that ASIM's practices of rescinding or voiding policies based on misrepresentations in policy applications violated the insurance and transportation codes.[2]

A copy of the examination report was sent to ASIM. In an attempt to challenge the findings in the examination report, ASIM sent a letter to the Commissioner seeking to appeal

---

[1] Specifically, the examination report states that ASIM's "practice of combining the renewal or installment payment invoice with a policy cancellation notice and failure to mail a written notice to the insured at least 10 days prior to the effective date of cancellation was a violation of" the administrative and insurance codes. *See* 28 Tex. Admin. Code § 5.7014(a) (2010) (Tex. Dep't of Ins., Exceptions to Cancellation and Non-Renewal Notice Requirements for General Liability and Certain Automobile Insurance Policies); Tex. Ins. Code Ann. § 551.104(e) (West 2009) (timing of cancellation of policy following notice).

[2] According to the report, "[n]otices sent to insureds stated that the policies had been voided due to alleged misrepresentation made in the policy applications subsequent to the reporting of claims on those policies." The policies themselves included language that indicated that "the policy is null and void if the statements about the number of household members in the policyholder's home and the number of household members that drive the insured's vehicle turn out to be false." The report concluded that such practices and policies violated Texas law. *See* Tex. Ins. Code Ann. § 705.004 (West 2009) (policy provisions indicating that false statements render policy void have no effect, as material misrepresentation must be judicially determined); Tex. Transp. Code Ann. § 601.073(c) (West 1999) ("A statement made by or on behalf of the insured or a violation of the policy does not void the policy.").

2

findings in the report, but received no response. ASIM also attempted to appeal the findings to the State Office of Administrative Hearings (SOAH), only to be told that the appeal could not be docketed without a formal request from the Commissioner. ASIM sent a second letter to the Commissioner requesting that its appeal be docketed at SOAH, but again received no response.

ASIM then filed suit for declaratory relief in district court to challenge the findings of the examination report. ASIM sought declarations that, contrary to the findings of the examination report, its invoicing and rescission practices did not violate Texas law, and also sought a declaration that it was entitled to appeal the findings in the examination report at SOAH. After the suit was filed, Old American filed a petition in intervention.[3] At the time it intervened, Old American was engaged in an ongoing administrative proceeding that the Department had initiated at SOAH. Among the issues in the SOAH action were whether Old American's practice of rescinding or voiding policies for misrepresentations made in policy applications violated the transportation code, *see* Tex. Transp. Code Ann. § 601.073(c) (West 1999), an issue involving one of the same statutory provisions cited in the examination of ASIM.

The Department filed a plea to the jurisdiction regarding ASIM's claims for declaratory relief, arguing that the claims were barred by sovereign immunity and were not ripe. The Department also filed a plea to the jurisdiction regarding Old American's claims and a motion to strike Old American's intervention. The trial court granted the Department's pleas to the jurisdiction and struck Old American's intervention, and this appeal followed.

---

[3] ASIM is a managing general agent of Old American.

STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate subject-matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the plaintiff's pleadings, as in this case, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* If the pleadings affirmatively negate the existence of jurisdiction, the plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend his pleadings. *Id.* at 226-27.

This Court reviews a trial court's decision on a motion to strike a petition in intervention under an abuse of discretion standard. *See In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006); *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (explaining that trial court has "broad discretion" in deciding motion to strike intervention). In reviewing matters committed to a trial court's discretion, we are not to substitute our own judgment for that of the trial court but to determine whether the trial court acted in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *See Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003).

**DISCUSSION**

*ASIM's Claims*

In the trial court, ASIM sought to challenge the findings of the examination report. In its plea to the jurisdiction, the Department responded that ASIM's claims are barred by sovereign

4

immunity. Texas courts have acknowledged the common-law rule that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) (quoting *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)). In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Id.* at 332. Texas courts defer to the legislature to waive sovereign immunity from suit, because this allows the legislature to protect its policymaking function. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002). To ensure that this legislative control is not lightly disturbed, a waiver of immunity must be clear and unambiguous. *Tooke*, 197 S.W.3d at 332-33.

ASIM presents three arguments that sovereign immunity is waived in this case, asserting that immunity is waived under the insurance code, the Uniform Declaratory Judgments Act (UDJA), and the ultra vires doctrine. We will address each argument in turn.

*Waiver of Immunity Under the Insurance Code*

ASIM first argues that the State's sovereign immunity from suit in this case is waived by the insurance code, asserting that the code provides for challenges to the findings of examination reports such as the one at issue here. Specifically, ASIM relies on language found in sections 36.201 and 36.202 of the code. *See* Tex. Ins. Code Ann. §§ 36.201, .202 (West 2009). Section 36.201, entitled "Action Subject to Judicial Review," states: "An action of the commissioner subject to judicial review under this subchapter includes a decision, order, rate, rule, form, or administrative or other ruling by the commissioner." *Id.* § 36.201. Section 36.202 states, "After failing to get relief

from the commissioner, any insurance company or other party at interest who is dissatisfied with an action of the commissioner may file a petition for judicial review against the commissioner as defendant." *Id.* § 36.202.

ASIM argues that the examination report qualifies as an action of the Commissioner under section 36.201 as a "decision" or "other ruling," and therefore an appeal may be taken from the report under section 36.202. The Department argues that an examination report is not an action of the Commissioner, as it was prepared by an appointed examiner. Further, the Department also argues that even if the examination report can be considered an action of the Commissioner, it is not among the appealable actions listed in section 36.201, as the report is not a decision, order, rate, rule, form, or other order.

We agree with the Department. While ASIM points to the report as being made by an "examiner appointed by the Commissioner," the report itself also states that it is made "*to* the Commissioner of Insurance of the State of Texas." (Emphasis added.) This language suggests that the report itself, while it may be considered by the Commissioner, is not in and of itself an action of the Commissioner. Further, even if the report were considered an action of the Commissioner, it does not fall within any of the reviewable actions listed in section 36.201, including "decision" or "other ruling," as argued by ASIM. While the report reflects the examiner's opinion that ASIM violated certain provisions of the insurance code, the report does not appear on its face to be binding on the Commissioner, and there is no indication in the record that the Commissioner accepted the findings made in the report, formally adopted the report, or sought any enforcement action against ASIM based on the report. Accordingly, we hold that the examination report is not a reviewable

6

action of the Commissioner under section 36.201 of the insurance code, and consequently conclude that the insurance code does not constitute a waiver of sovereign immunity regarding challenges to the contents of the examination report.

*Waiver of Immunity Under the UDJA*

ASIM next argues that sovereign immunity is waived under the UDJA. The supreme court has interpreted the UDJA as a waiver of sovereign immunity from suits brought to construe statutes. *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 297 (Tex. 1995). ASIM contends that, as it seeks interpretation of Texas statutes, including the insurance code and the administrative code, it has brought a cognizable claim under the UDJA.

The Department responds that ASIM's UDJA claim concerning statutory construction is not ripe. Ripeness is a threshold question that implicates subject-matter jurisdiction and emphasizes the necessity of a concrete injury for a justiciable claim to be presented. *Texas Court Reporters Certification Bd. v. Esquire Deposition Servs., L.L.C.*, 240 S.W.3d 79, 92 (Tex. App.—Austin 2007, no pet.) (citing *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000)). Ripeness concerns whether, at the time a lawsuit is brought, the facts have developed sufficiently such that an injury has occurred or is likely to occur, rather than being contingent or remote. *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998). To establish that a claim is ripe based on an injury that is likely to occur, the plaintiff must demonstrate that the injury is imminent, direct, and immediate, and not merely remote, conjectural, or hypothetical. *Gibson*, 22 S.W.3d at 852. By focusing on the concreteness of injury, the ripeness doctrine allows a court to avoid premature adjudication as well as issuance of advisory opinions. *Id.*

7

Generally, an administrative agency's action must be final before it is judicially reviewable. *Rea v. State*, 297 S.W.3d 379, 383 (Tex. App.—Austin 2009, no pet.) (citing *Edwards Aquifer Auth. v. Bragg*, 21 S.W.3d 375, 380 (Tex. App.—San Antonio 2000), *aff'd*, 71 S.W.3d 729 (Tex. 2002), and *City of El Paso v. Madero Dev.*, 803 S.W.2d 396, 399 (Tex. App.—El Paso 1991, writ denied)). In the context of ripeness, the finality requirement concerns whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury. *Id.* (citing *Maguire Oil Co. v. City of Houston*, 243 S.W.3d 714, 718 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) and *Madero Dev.*, 803 S.W.2d at 399). The administrative decision must be formalized, and its effects felt in a concrete way by the challenging party. *Id.* at 384 (citing *Madero Dev.*, 803 S.W.2d at 398-99).

The Department relies primarily upon this Court's decision in *Rea v. State* in arguing that ASIM's claims under the UDJA are not ripe. *See generally id.* In *Rea*, the plaintiff, a physician, sought injunctive and declaratory relief after an expert physician panel appointed by the Texas Medical Board determined that Rea had violated the standard of care in treating certain patients. *Id.* at 382. After a settlement conference with Rea, the Board filed a complaint against him at SOAH for the purpose of taking disciplinary action against him. *Id.* While the SOAH action was pending, Rea filed suit for declaratory relief in district court under the UDJA, seeking a declaratory judgment that the Board's actions were "unconstitutional, in contravention of statutes and regulations, and in excess of its lawful powers and authority." *Id.* This Court held that, as the administrative proceeding involving Rea's claims had not yet concluded, no final agency decision had been made, and accordingly Rea's UDJA action was not ripe. *Id.* at 384. This Court stated that, "because the

8

Board is merely *seeking* to take disciplinary action against Rea, no final decision has been made at the agency level." *Id.* (emphasis in original).

In this case, as in *Rea*, no final agency decision has been made regarding the examination of ASIM. No disciplinary or other action has been taken with regard to the report, nor is there evidence in the record that the findings have been officially adopted.

ASIM argues that a different result is mandated under *Texas Department of Banking v. Mount Olivet Cemetery Ass'n*. 27 S.W.3d 276 (Tex. App.—Austin 2000, pet. denied). However, the factual setting in *Mount Olivet* differs from the case before us. In *Mount Olivet*, which concerned whether certain funds collected under contracts for prepaid funeral expenses escheat to the State, the Department of Banking "had cited Mount Olivet for violation of a statute, had refused to negotiate any short-term settlement of Mount Olivet's remitting the funds, and had referred the matter to the Comptroller for enforcement action." *Id.* at 282. This Court concluded that, given such actions by the Department of Banking, the challenge was ripe. *Id.* The Department of Banking's actions, however, were considerably more final than those taken by the Department of Insurance in the case before us. While in *Mount Olivet* the Department of Banking had cited Mount Olivet and referred the matter for enforcement, in this case no formal citation has been issued and no disciplinary proceedings have been commenced. Therefore, we conclude that *Mount Olivet* does not compel the conclusion that ASIM's claims under the UDJA are ripe.

Accordingly, we agree with the Department that ASIM's UDJA claims are not ripe.

*Waiver of Immunity Under the Ultra Vires Doctrine*

ASIM next argues that the Commissioner acted beyond the scope of his authority with

9

regard to the report, and consequently the report may be challenged in district court. A suit complaining that a government officer "acted without legal authority" and seeking to compel the official "to comply with statutory or constitutional provisions" is an ultra vires suit that is not protected by sovereign immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Sovereign immunity does not act as a bar to ultra vires suits, not because immunity has been waived, but because "ultra vires suits do not attempt to exert control over the state—they attempt to reassert the control of the state." *Id.* "Stated another way, these suits do not seek to alter government policy but rather to enforce existing policy." *Id.*; *see also IT-Davy*, 74 S.W.3d at 855 ("[S]uits to compel state officers to act within their official capacity do not attempt to subject the State to liability.").

In this case, ASIM sought a declaration that "the plaintiff is entitled to appeal the findings of a final examination report adopted by the Texas Department of Insurance." On appeal, ASIM argues that the Commissioner acted beyond the scope of his authority by refusing to docket the appeal of the examination report at SOAH. However, ASIM has pointed to no statute or rule that requires the Commissioner to docket an appeal of an examination report at SOAH. As explained above, an examination report is not an "action" of the Commissioner subject to judicial review. *See* Tex. Ins. Code Ann. § 36.201 (listing appealable actions of Commissioner). Further, while the insurance code provides that some examination reports may be appealed, *see id.* § 751.206 (West 2009) (providing procedure for insurers to request hearing challenging market conduct examinations), no such provision is made for examination reports authorized under section 4053.107 of the insurance code. Accordingly, ASIM has not stated a valid ultra vires claim with regard to the Commissioner's failure to docket the SOAH appeal.

10

ASIM also argues that the contents of the report exceed the Commissioner's statutory authority, as the report cites violations of the transportation code, which ASIM argues the Commissioner has no authority to interpret. As analyzed above, however, such a challenge is not yet ripe, as the findings in the report do not constitute a final decision on the agency level. *See Rea*, 297 S.W.3d at 383. Even if the claims challenging the report were ripe, it is undisputed that the Commissioner has the authority to complete it. *See* Tex. Ins. Code Ann. § 4053.107 (authorizing Commissioner to conduct examination of managing general agents). The completion of the examination report is consequently a matter of the Commissioner's discretion. *See Heinrich*, 284 S.W.3d at 372 ("To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion . . . ."); *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 267 & n.5 (Tex. App.—Austin 2002, no pet.) (holding that where Department had authority to interpret form, "[w]hether TDI's interpretation is correct or incorrect cannot be the factor that confers jurisdiction" under ultra vires doctrine).

Based on this analysis, we conclude that the trial court did not err in granting the Department's plea to the jurisdiction regarding ASIM's claims.

### *Intervention of Old American*

Old American asserts on appeal that the trial court erred in striking its petition in intervention. "Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. When an intervention is challenged by a party's motion to strike, the intervenor bears the burden to demonstrate a "justiciable interest" in the pending suit. *In re Union Carbide Corp.*, 273 S.W.3d 152, 155 (Tex. 2008);

11

*Zeifman v. Michels*, 229 S.W.3d 460, 464 (Tex. App.—Austin 2007, pet. denied). To constitute a justiciable interest, "[t]he intervenor's interest must be such that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought" in the original suit. *Union Carbide*, 273 S.W.3d at 154-55 (quotation omitted). "In other words, a party may intervene if the intervenor could have brought the pending action, or any part thereof, in his own name." *Id.* (quotation omitted).

Even when the intervenor has a justiciable interest in a pending suit, the ultimate determination of whether to strike an intervention remains within the trial court's sound discretion. *See Zeifman*, 229 S.W.3d at 464 (explaining that right to intervene is "ultimately rooted in equity"); *Atchley v. Spurgeon*, 964 S.W.2d 169, 171 (Tex. App.—San Antonio 1998, no pet.) (holding that court may consider equities in deciding motion to strike intervention). Factors that a court may consider when faced with a motion to strike include whether the intervention will complicate the case by the "excessive multiplication of the issues" and whether the intervention is "almost essential to effectively protect the intervenor's interest." *Guaranty Fed.*, 793 S.W.2d at 657; *see Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 72 (Tex. App.—Fort Worth 2003, no pet.) (holding that court may consider "other avenues available" to protect intervenor's interest when determining whether intervention "almost essential").

In this case, Old American, like ASIM, does not have a justiciable interest in the suit. Like ASIM, Old American's position is similar to the plaintiff in *Rea*. As in *Rea*, the issues on which Old American seeks to intervene are also the subject of a SOAH action brought by the

Department that has not yet been resolved. *See Rea*, 297 S.W.3d at 384-85 (concluding that Rea's claims were not ripe in absence of final agency decision).[4] Further, even if Old American had a justiciable interest in the suit, intervention is not essential to protect its interests. Old American has contested the Commissioner's findings in the SOAH action, and can appeal the decision in that action if it is unfavorable. *See Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 260 S.W.3d 647, 650 (Tex. App.—Austin 2008, no pet.) ("[A] declaratory judgment will not lie if there is a pending action between the parties which might resolve the exact issues at hand.") (quotation omitted). Accordingly, we conclude that the trial court did not abuse its discretion in striking Old American's petition in intervention.[5]

### CONCLUSION

Finding no reversible error, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:  October 15, 2010

_____

[4]  For the reasons stated above, *Rea*, and not *Mount Olivet*, controls our analysis.

[5]  Based on this analysis, we need not address the trial court's grant of the Department's plea to the jurisdiction regarding Old American's claims.