Glenn and JoLynn BRAGG,
Petitioners,

v.

EDWARDS AQUIFER AUTHORITY
and Gregory Ellis, General Manager
of the Edwards Aquifer Authority, Re-
spondents.

No. 00–0436.

Supreme Court of Texas.

Argued Oct. 2, 2001.

Decided Feb. 14, 2002.

Rehearing Overruled May 9, 2002.

**730**

Paul Matthews Terrill, Vincent L. Hazen, Hazen & Terrill. P.C., E. Lee Parsley, Locke Liddell & Sapp LLP, Austin, Allan E. Parker, San Antonio, William Powers, Jr., Austin, for Petitioner.

Darcy Alan Frownfelter, Andrew S. Miller, Hunter Wyatt Burkhalter, Kemp Smith, P.C., Austin, Mike A. Hatchell, Hatchell P.C., Tyler, for Respondent.

Justice HANKINSON delivered the opinion of the Court.

In *Barshop v. Medina County Underground Water Conservation District,* 925 S.W.2d 618 (Tex.1996), we upheld the Edwards Aquifer Act[1] over a number of con-

stitutional challenges. We now consider whether certain actions of the entity created to carry out the Legislature's conservation mandate as expressed in the Edwards Aquifer Act violate provisions of the Private Real Property Rights Preservation Act. See TEX. GOV'T CODE §§ 2007.001–.045.

Plaintiffs Glenn and JoLynn Bragg sued the Edwards Aquifer Authority and its general manager, Gregory Ellis, claiming that the Authority violated the Property Rights Act by failing to prepare "takings impact assessments" (TIAs) before issuing its aquifer-wide well-permitting rules and applying those rules to the Braggs' applications for two well permits. See TEX. GOV'T CODE § 2007.043. The trial court agreed that the Authority did not comply with the TIA requirement, and declared void the proposed actions on the Braggs' permit applications as well as parts of the Authority's well-permitting rules. See TEX. GOV'T CODE § 2007.044(a). It also awarded the Braggs attorney's fees. See id. § 2007.044(c). Concluding that the Authority need not prepare TIAs under the circumstances presented, the court of appeals vacated in part and reversed and rendered in part. 21 S.W.3d 375.

We agree that the Property Rights Act does not require the Authority to prepare TIAs before adopting well-permitting rules and applying those rules to the Braggs' permit applications, but for different reasons than those the court of appeals expressed. We hold that the Authority's adoption of well-permitting rules falls within the exception to the Property Rights Act for actions taken under a political subdivision's statutory authority to prevent waste or protect rights of owners of interest in groundwater. See TEX. GOV'T

1. Act of May 30, 1993, 73rd Leg., R.S., ch. 626, 1993 Tex. Gen. Laws 2350, *as amended by* Act of May 16, 1995, 74th Leg., R.S., ch. 524, 1995 Tex. Gen. Laws 3280, Act of May 28, 1995, 74th Leg., R.S., ch. 261, 1995 Tex. Gen. Laws 2505, and Act of May 6, 1999, 76th Leg., R.S., ch. 163, 1999 Tex. Gen. Laws 634 (hereinafter referred to as the "Act.")

CODE § 2007.003(b)(11)(C). We also conclude that the Authority's proposed actions on the Braggs' permit applications constitute "enforcement of a governmental action," to which the TIA requirement does not apply. *See id.* §§ 2007.003(a)(4), 2007.043(a). Accordingly, we affirm the judgment of the court of appeals.

The Braggs own two commercial pecan orchards in Medina County. The first orchard is located on approximately sixty acres of land, along with the Braggs' residence and pecan processing facility. That orchard is known as the "Home Place Orchard." The second orchard, known as the "D'Hanis Orchard," is located on approximately forty-two acres. The Braggs drilled a well into the Edwards Aquifer on the Home Place Orchard in 1979. They began drilling a well on the D'Hanis Orchard in December 1994, and completed it in February 1995.

As we explained in *Barshop*, in 1993 the Legislature enacted the Edwards Aquifer Act to manage the aquifer and to sustain the diverse economic and social interests dependent on the aquifer. Act §§ 1.01, 1.06; *Barshop*, 925 S.W.2d at 623–24. To carry out its conservation mandate in the face of anticipated increases in withdrawal of water from the aquifer and the potentially devastating effects of a drought, the Legislature created the Edwards Aquifer Authority. *See* Act § 1.02; *Barshop*, 925 S.W.2d at 623–24. The Authority is a conservation and reclamation district authorized by Texas Constitution article XVI, section 59. Act § 1.02(b). The Legislature has charged the Authority with regulating groundwater withdrawals from the aquifer. *See* Act § 1.14; *Barshop*, 925 S.W.2d at 624. The Legislature further directed the Authority to manage groundwater withdrawals from the aquifer by a permit system. Act § 1.15.

The Authority's adoption of rules governing that permit system is the focus of the dispute in this case. In the Act, the Legislature established an aquifer-wide cap on water withdrawals by nonexempt wells of 450,000 acre-feet of water per year through 2007 and 400,000 acre-feet per year thereafter. *Id.* § 1.14(b), (c). It authorized the Authority to review and increase the cap if after appropriate study, implementation of water management and drought planning strategies, and consultation with state and federal agencies, the Authority determines that additional water is safely available from the aquifer. *Id.* § 1.14(d); *see Barshop*, 925 S.W.2d at 624. The permit system established by the Legislature gives preference to "existing users," which the Act defines as people who have withdrawn and beneficially used underground water from the aquifer on or before June 1, 1993. Act § 1.03(10); *Barshop*, 925 S.W.2d at 624. Under the Act, the Authority may grant initial regular permits only to existing users who properly file a "declaration of historical use," and who can establish, by "convincing evidence," beneficial use of underground water withdrawn between June 1, 1972, and May 31, 1993. Act §§ 1.16(a), (b), (d).

The Act entitles an existing user to a permit allowing the user to withdraw an amount of water equal to the user's maximum beneficial use of water without waste during any one calendar year of the historical period, unless the aggregate total of such use throughout the aquifer exceeds the 450,000 acre-foot cap. *Id.* § 1.16(e). If this occurs, the Legislature has directed that the Authority proportionately adjust the amount of water authorized for withdrawal under the permits to meet the cap. *Id.* This downward adjustment is limited in two circumstances, the first of which is relevant here: (1) an existing irrigation user must receive a permit of not less than two acre-feet a year for each acre of land

the user actually irrigated in any one calendar year during the historical period; and (2) an existing user who operated a well for three or more years during the historical period must receive a permit for at least the average amount of water withdrawn annually during the historical period. *Id.* Subject to certain restrictions, permitted water rights may also be sold or leased. *Id.* §§ 1.22, 1.34.

Following our decision in *Barshop* upholding the constitutionality of the Edwards Aquifer Act, the Authority promulgated rules governing the permitting process, as section 1.11 of the Act requires. *See id.* § 1.11. At issue in this case is the second of three sets of permitting rules. The Authority repealed its first set of rules. *See* 22 Tex. Reg. 11239–45 (1997). It proposed and partially adopted a third set after another court invalidated the second set of rules on grounds unrelated to compliance with the Property Rights Act. *See Living Waters Artesian Springs, Ltd. v. Edwards Aquifer Auth.,* No. 98–02644 (353rd Dist. Ct., Travis County, Dec. 17, 1998) (invalidating second set based on failure to comply with Texas Government Code § 2001.033 (Administrative Procedure Act)); 25 Tex. Reg. 7493–596, 9868–918, *adopted* 25 Tex. Reg. 10928–11076 (2000) (third set). The second set of rules [2] followed in relevant part the language of the Edwards Aquifer Act in outlining when and in what amounts initial regular permits would be issued. *See* Edwards Aquifer Auth. Rules §§ 705.67(e)-(i), 705.77.

In 1996 the Braggs applied to the Authority for an initial regular permit to withdraw water from each of their wells to irrigate their orchards. The application form, which was provided by the Authority, included a section entitled "Declaration of Historical Use." That section requested the applicant to list on a separate line for each year the total amount of water withdrawn and the total number of acres irrigated each year of the statutory historical period, June 1, 1972, through May 31, 1993. In their application for the Home Place well, the Braggs listed amounts withdrawn beginning in 1980 and continuing through the end of the historical period in 1993. They added lines for water withdrawn in 1994, 1995, and 1996. As the Braggs did not drill the D'Hanis well until after the historical use period, they left blank the lines corresponding to the historical period, but added their own lines for amounts withdrawn in 1995 and 1996. The Braggs also reported on the Home Place application that they irrigated 56.6 acres each year from 1980 through 1993, and also from 1994 through 1996. They reported on the D'Hanis application that they irrigated forty-two acres for the years 1995 and 1996.

The Authority's general manager Ellis recommended denying a permit for the D'Hanis well because no water was reported withdrawn during the historical use period. For the Home Place well, he recommended granting an initial regular permit of 113.2 acre-feet based on the guaranteed irrigator minimum of two acre-feet of water for each of the 56.6 acres irrigated. The Braggs explain that this proposed allocation is undisputedly insufficient to grow pecans in commercial quantities.

Before the Authority's board of directors could act on Ellis' recommendations, the Braggs sued the Authority and Ellis. They sought a judgment invalidating the proposed actions on their permit

---

**2.** 22 Tex. Reg. 11239 (1997), *adopted* 23 Tex. Reg. 1593 (1998), *repealed by* 25 Tex. Reg. 7181–82, 7184–95 (2000) (former 31 Tex. Admin. Code §§ 701.1–709.45) (hereinafter referred to as the "Edwards Aquifer Authority Rules").

applications and the Authority's rules, requirements, policies, and guidelines for the well-permitting process as they pertain to the Braggs' applications, for failure to prepare TIAs under the Property Rights Act. *See* TEX. GOV'T CODE § 2007.044(a). The Authority answered that TIAs were not required based on four exceptions to the Property Rights Act. *See* TEX. GOV'T CODE § 2007.003(b)(4), (6), (11)(C), (13). Following a bench trial, the trial court declared void for failure to prepare TIAs: (1) the Authority's well-permitting rules found in the Texas Administrative Code, Title 31, chs. 703, 705, and 707 (1999); and (2) the proposed actions on the Braggs' permit applications. *See* TEX. GOV'T CODE § 2007.044(a). The trial court also awarded the Braggs their attorney's fees and court costs. *See id.* § 2007.004(c). The Authority and Ellis appealed.

The court of appeals vacated in part, and reversed and rendered in part. 21 S.W.3d 375. It concluded that the Authority's adopting well-permitting rules fell within the exception to the Property Rights Act for actions reasonably taken to fulfill an obligation mandated by state law. *Id.* at 380 (citing TEX. GOV'T CODE § 2007.003(b)(4)). The court explained that the Edwards Aquifer Act directs the Authority to adopt rules necessary to carry out its duties and specifically requires the Authority to regulate and ensure compliance with the permitting system. *Id.* (citing Act §§ 1.11(a), (b)). It rejected the Braggs' argument that all rulemaking is expressly subject to the Property Rights Act requirements, *see* TEX. GOV'T CODE § 2007.003(a)(1), concluding that although the statute does encompass rulemaking by governmental entities in general, it provides an exception for action, including rulemaking, by a political subdivision that is reasonably taken to fulfill an obligation mandated by state law. 21 S.W.3d at 380 (citing TEX. GOV'T CODE § 2007.003(b)(4)).

Finally, the court of appeals concluded that the trial court did not have subject-matter jurisdiction over the Braggs' claims concerning the Authority's proposed action on their permit applications because those claims were not yet ripe for judicial review. *Id.* at 380–81. Nonetheless, the court recognized "the futility of a remand" because the Authority "has unequivocally stated" that it will act in conformity with the general manager's recommendations without preparing a TIA. *Id.* at 381. Then, construing the Braggs' pleadings broadly to request a declaratory judgment that the Authority must prepare a TIA before acting on the applications, the court held that Authority did not have to prepare TIAs before acting on the applications. *Id.* It concluded that the recommended actions were mandated by the language of the Edwards Aquifer Act and thus fell within the same exception to the Property Rights Act for actions reasonably taken to fulfill an obligation mandated by state law. *Id.* (citing TEX. GOV'T CODE § 2007.003(b)(4); *McMillan v. Northwest Harris County Mun. Util. Dist. No. 24*, 988 S.W.2d 337, 340–42 (Tex. App.-Houston [1st Dist.] 1999, pet. denied)). The court of appeals accordingly vacated the trial court's judgment on the permit applications, and reversed and rendered judgment that the Braggs take nothing on the other claims. *Id.* at 382. We granted the Braggs' petition for review on motion for rehearing.[3]

---

**3.** We received amicus briefs supporting the petitioners from: Texas and Southwestern Cattle Raisers Association, Texas Farm Bureau, Texas Nursery & Landscape Association, Texas Pecan Growers Association, and Texas Wildlife Association. We received amicus briefs supporting the respondents from: City of San Antonio, Harris–Galveston Coastal Subsidence District, and Texas Water Conservation Association.

■ As a preliminary matter we consider whether this action is moot. As noted above, the Braggs challenge the Authority's second set of permitting rules, which are no longer in effect. These rules were invalidated by another court on grounds unrelated to compliance with the Property Rights Act. *See Living Waters Artesian Springs, Ltd. v. Edwards Aquifer Auth.*, No. 98–02644 (353rd Dist. Ct., Travis County, Dec. 17, 1998). The Authority did not appeal that judgment, but instead repealed the rules and proposed and partially adopted new ones.[4] The Authority did not prepare a TIA before adopting the third set of rules or before processing the Braggs' same permit applications under those new rules. The general manager has recommended the same action on the Braggs' permit applications under the new rules as he did under the second set of rules.

Both parties argue that the case is not moot because the Braggs' claim for attorney's fees presents a live issue for judicial resolution. *See Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988). They further urge that if the case is moot, several possible exceptions to the mootness doctrine apply, including: (1) that the underlying dispute is capable of repetition yet evading review; (2) that the "public interest" demands review; and (3) that a defendants' voluntary cessation of a challenged practice does not deprive a court of jurisdiction to determine the legality of that practice.

We agree with the parties that this case is not moot. We are presented with a live controversy in that even though new rules are in place, the Authority did not perform a TIA before adopting those rules, still refuses to perform a TIA before acting on the Braggs' permit applications, and has recommended the same action on those applications as under the previous rules. Although the new rules differ in some substantive respects from the old rules (and the parties disagree about the significance of those differences), none of the changes to the rules highlighted by the parties affects the legal analysis of whether the Property Rights Act requires the Authority to prepare TIAs before adopting well-permitting rules or acting on individual permit applications. Thus the live issues in this case have not changed, and our decision will resolve whether the Authority should have prepared a TIA before adopting its rules or must prepare a TIA before applying the rules to the Braggs' pending applications. Under these circumstances, we conclude that this case is not moot, and proceed to examine the merits of the Braggs' challenge to the Authority's actions.

Turning to the question of whether the Property Rights Act requires the Authority to prepare a TIA before adopting aquifer-wide well-permitting rules, a question of statutory interpretation that we review *de novo, see City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000), we begin as always with the plain language of the Legislature's enactment. *See* TEX. GOV'T CODE § 311.011; *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex.2000); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). The Property Rights Act creates two causes of action in favor of real property owners: (1) a statutory cause of action for taking; and (2) a cause of action based on governmental action taken without prepar-

---

4. *See* 22 Tex. Reg. 11239 (1997), *adopted* 23 Tex. Reg. 1593 (1998), *repealed by* 25 Tex. Reg. 7181–82, 7184–95 (2000) (former 31 TEX. ADMIN. CODE §§ 701.1–709.45) (second set); 25 Tex. Reg. 7493–596, 9868–918, *adopted* 25 Tex. Reg. 10928–11076, 25 Tex. Reg. (2000) (third set).

ing a TIA, if the Property Rights Act requires a TIA. TEX. GOV'T CODE §§ 2007.021, 2007.044. The Property Rights Act applies to "governmental entities," including political subdivisions such as the Authority. *See* TEX. GOV'T CODE § 2007.002(1)(B); Edwards Aquifer Act § 1.02; *Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385, 391 (Tex.1977). Thus the Authority's actions are generally subject to the requirements of the Property Rights Act unless an exception to that Act's coverage applies. *See* TEX. GOV'T CODE §§ 2007.003(b)-(e) (excepting certain governmental actions); *id.* § 2007.043(a) (requiring TIA only for governmental actions described in sections 2007.003(a)(1)-(3)).

▇▇▇▇ As an initial matter, we agree with the Braggs that adopting rules is clearly a "governmental action" within the scope of the Property Rights Act, *see* TEX. GOV'T CODE § 2007.003(a)(1), and that rulemaking in general is one of the types of proposed governmental action for which a governmental entity must prepare a TIA. *See id.* § 2007.043(a). But just as rulemaking is a covered governmental action for purposes of section 2007.0043(a), which sets out when a TIA is required, rulemaking is likewise a covered governmental action for purposes of the exceptions to the Property Rights Act, specifically those enumerated in section 2007.003(b). *Id.* § 2007.003(b) ("This chapter does not apply to the following governmental actions. . . ."). Thus we conclude, as did the court of appeals, that the Property Rights Act applies to rulemaking by governmental entities in general, but contains exceptions for actions, including rulemaking under certain circumstances, when those actions fall within the enumerated exceptions to that Act. *See* 21 S.W.3d at 380. We further agree with the court of appeals that the Authority's adoption of well-permitting

rules is "outside the ambit of the Property Rights Act," *id.*, but for a different reason.

▇▇▇▇ The Authority argues that its adoption of well-permitting rules was done pursuant to its statutory authority to prevent waste or protect the rights of owners of interest in groundwater, and thus that action is excepted from the Property Rights Act under the express terms of section 2007.003(b)(11)(C), which excepts actions taken under a political subdivision's "statutory authority to prevent waste or protect rights of owners of interest in groundwater." TEX. GOV'T CODE § 2007.003(b)(11)(C). The Braggs respond that whether they waste water is a question of fact, and that they produced undisputed evidence at trial that they use conservative water management practices, have never been cited by any governmental authority for waste, and have never committed waste as defined in Edwards Aquifer Act § 1.03(21) and corresponding Edwards Aquifer Authority Rule 703.1(65). They further disagree that the permitting rules were adopted to protect the rights of owners of interests in groundwater because they claim the Authority has denied over thirty percent of the permit applications without investigating whether it could raise the cap on total withdrawals and thereby satisfy all the applicants' requests.

We agree with the Authority that its adoption of well-permitting rules falls within section 2007.003(b)(11)(C). The governmental action the Braggs have challenged is the Authority's action of adopting rules without performing a TIA. They do not challenge any particular rule as being outside the Authority's statutory authorization. Rather, they claim that because they do not waste water, the Authority could not have adopted its aquifer-wide rules pursuant to its statutory authority to prevent waste, and that by denying their requested permits the Authority is not

protecting their rights as owners of interests in groundwater. We disagree. Waste, in this context, is broader than the Braggs' contention. Authority to prevent waste as used in section 2007.003(b)(11)(C) refers not just to authority to prevent the specific examples of waste listed in the Edwards Aquifer Act, *see* Act § 1.03(21), but to the broader concept of preventing waste by conserving, protecting, and preserving the aquifer through the Legislature's designated permit system. This is similar to the concept of governmental action taken to prevent waste of oil and gas and to protect the correlative rights of owners of interests in oil and gas, for which the Private Property Rights Act also provides an exception. *See* TEX. GOV'T CODE § 2007.003(b)(9); *see also Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 688–89 (Tex.1992) (holding that Railroad Commission could promulgate rules to prevent waste and promote conservation, and was not required to determine questions of waste by contested-case proceeding).

Moreover, the challenged action, rulemaking, is an action at a level of general application—the rules apply to everyone who seeks to withdraw water from the aquifer. Thus the question we must answer is not whether the Braggs waste water, which is a question of enforcing the rules as to their particular applications, but whether in the Edwards Aquifer Act the Legislature has authorized the Authority to take action, including rulemaking, to prevent waste or protect the rights of owners of interest in groundwater, and whether the Authority has taken action under that statutory authority. *See* TEX. GOV'T CODE § 2007.003(b)(11)(C). We conclude that it has.

The Legislature created the Edwards Aquifer Authority for the express purpose of conserving and managing the water in the aquifer by preventing waste and protecting the rights of owners of interests in groundwater. *See* Act §§ 1.01, 1.06, 1.07; *Barshop*, 925 S.W.2d at 624. It provided the Authority with "all of the powers, rights, and privileges necessary to manage, conserve, preserve, and protect the aquifer and to . . . prevent the waste or pollution of water in, the aquifer." Act § 1.08(a). It mandated that the Authority manage withdrawals from the aquifer by a permit system, and it directed that the Authority "shall adopt rules necessary to carry out [its] powers and duties," and "shall ensure compliance with permitting, metering, and reporting requirements and shall regulate permits." *Id.* §§ 1.15(a), 1.11(a), (b). The Legislature also set out the details of significant elements of the permitting system in sections 1.16 through 1.21 of the Act. *See id.* §§ 1.16–.21; *Barshop*, 925 S.W.2d at 624. The Authority must allocate water and regulate permits within the specific guidelines the Legislature established in the Act. *See* Act §§ 1.11(b), 1.14(a).

The rules the Braggs challenge were promulgated under the Legislature's mandate that the Authority enact rules allocating water withdrawal by a permitting system. *See* Edwards Aquifer Auth. Rules §§ 701.1 ("The purpose of the Authority rules is to implement the Authority's powers and duties under the Edwards Aquifer Act"), 705.1 ("The purpose of the permit program of the Authority is to: . . . (4) manage, conserve, preserve and protect the aquifer; . . . (6) prevent water waste in the aquifer"). The detailed permitting requirements set out in the Act form the basis of the Authority's rules governing the permitting process. For example, section 1.16(a) of the Act specifies that "An existing user may apply for an initial regular permit by filing a declaration of historical use of underground water withdrawn from the aquifer during the historical period from June 1, 1972, through May 31,

1993." Act § 1.16(a). The Authority's rules likewise provide that "the board shall grant the application for an initial regular permit to an existing user who ... establishes ... beneficial use of groundwater from the aquifer during the historical period," and defines the historical period as June 1, 1972 through May 31, 1993. Edwards Aquifer Auth. Rules §§ 705.67(e), 703.1(30). The Act also provides that "To the extent water is available for permitting, the board shall issue the existing user a permit for withdrawal of an amount of water equal to the user's maximum beneficial use of water without waste during any one calendar year of the historical period." Act § 1.16(e). The Authority's corresponding rule follows that language almost verbatim: "To the extent groundwater is available for permitting, the board shall issue an existing user an initial regular permit authorizing the withdrawal of groundwater in an amount equal to the user's maximum beneficial use of groundwater without waste during any one calendar year of the historical period." Edwards Aquifer Auth. Rule § 705.67(i)(1). As these examples demonstrate, the Authority's act of adopting well-permitting rules was taken under its statutory authority to prevent waste or to protect the rights of owners of interest in groundwater. The act of adopting well-permitting rules is therefore exempt from the requirements of the Property Rights Act under section 2007.003(b)(11)(C) of that act. *See* TEX. GOV'T CODE § 2007.003(b)(11)(C).

Finally we turn to the Braggs' claim that the Authority had to prepare TIAs for its proposed actions on the Braggs' permit applications. We agree with the court of appeals that review of the proposed actions is premature because the Property Rights Act creates a claim in favor of a property owner "affected by a governmental action taken without the preparation of a[TIA]," and the Authority has not yet taken action.

*Id.* § 2007.044(a); *see* 21 S.W.3d at 380–81. We also agree, however, that the Braggs requested declaratory relief that the Authority must prepare TIAs before acting on their permit applications. The trial court granted this relief by voiding the Authority's proposed actions on the applications.

■ We conclude that the plain language of the Property Rights Act does not require the Authority to prepare TIAs before acting on individual permit applications. First, section 2007.043(a), setting out the TIA requirements, expressly applies only to proposed governmental action described in sections 2007.003(a)(1) through (3). TEX. GOV'T CODE § 2007.043(a). "Enforcement" of a governmental action "through the use of permitting" falls under section 2007.003(a)(4). *Id.* § 2007.003(a)(4). The Braggs argue that the proposed permitting decisions here do not implicate "enforcement," and thus a TIA is required. And, they argue, because section 2007.003(a)(1) covers adopting a "regulatory requirement, resolution, policy, guideline, or similar measure," permitting, which is a type of regulatory requirement, is also covered by that section. But as with their view that rulemaking is governmental action for purposes of the TIA requirement but not for purposes of the exceptions to the Property Rights Act, this position ignores the statute's plain language.

Section 2007.043(a) requires a TIA only for a "proposed governmental action described in Section 2007.003(a)(1) through (3)." *Id.* § 2007.043(a). Permitting is not "a governmental action described in section 2007.003(a)(1) through (3)," but is expressly included in section 2007.003(a)(4). *Id.* § 2007.003(a)(4). Governmental actions included in section 2007.003(a)(4) are not subject to the TIA requirement. The

regulatory requirements established by the Legislature in the Edwards Aquifer Act, and by the Authority in its well-permitting rules, are enforced by permitting. *See* Edwards Aquifer Act § 1.15(a), (b) ("PERMIT REQUIRED. (a) The authority shall manage withdrawals from the aquifer ... as provided by this Act. (b) Except as provided by Sections 1.17 and 1.33 of this article, a person may not withdraw water from the aquifer ... without obtaining a permit from the authority."). The Legislature has dictated that "[a] person may not withdraw water from the aquifer except as authorized by a permit issued by the authority or by this article." *Id.* § 1.35(a). Granting or denying permit applications based on the requirements of the Edwards Aquifer Act is how the Authority enforces the relevant parts of that statute. Thus, when the Authority enforces its regulatory requirements through permitting, no TIA is required under section 2007.043(a). *See* Tex. Gov't Code § 2007.043(a).

Because the Property Rights Act contains an express exception for action taken under a political subdivision's statutory authority to prevent waste or protect the rights of owners of interest in groundwater, we conclude that the Edwards Aquifer Authority need not prepare a TIA before adopting well-permitting rules pursuant to its statutory authority under the Edwards Aquifer Act. We further conclude that the TIA requirement does not apply to the Authority's enforcement of its rules by permitting actions. Accordingly, we affirm the judgment of the court of appeals.