ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

April 15, 2009

The Honorable Jim Pitts
Chair, Committee on Appropriations
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0708

Re: Whether the Edwards Aquifer Authority may promulgate rules prohibiting certain permits or contracts with recharge facilities constructed prior to September 1, 1993 (RQ-0737-GA)

Dear Representative Pitts:

The Medina Lake Dam, owned by Bexar-Medina-Atascosa Counties Water Control and Improvement District No. 1 ("BMA"), was built in 1912 to impound water for irrigation purposes and is now in need of approximately $10 million in repairs.[1] Waters in the Medina Lake Dam system have recharged the Edwards Aquifer for decades, perhaps since the system's inception.[2] Your predecessor related that BMA has never received compensation for the recharge it contributes to the aquifer, and that BMA believes the Edwards Aquifer Authority (the "EAA") should assist in funding the necessary repairs to ensure that the dam is able to continue recharging the aquifer. Request Letter at 1.

BMA contends that the EAA could assist in funding the repairs to the dam by issuing to the BMA recharge, storage, and recovery permits. BMA Brief at 7. BMA explains that such permits would allow BMA to recharge and store water in the aquifer, and entitle BMA to subsequently recover an amount of water calculated to be available as a result of the recharge attributable to the dam. *Id.* When the water is withdrawn under the recovery permit, it could then be sold to users, generating funds for the repair of the dam. *Id.* Alternatively, BMA suggests, the same result could be achieved by a contract between the EAA and BMA. *Id.* The request letter asked about the EAA's authority under the Edwards Aquifer Act (the "Act")[3] to promulgate rules that restrict granting such

---

[1]*See* Request Letter at 1 (*available at* http://www.texasattorneygeneral.gov); Brief on behalf of the BMA, to Honorable Greg Abbott, Attorney General of Texas, at 5-7 (Oct. 6, 2008) (on file with the Opinion Committee) [hereinafter BMA Brief].

[2]BMA Brief at 5–6; Brief on behalf of the Edwards Aquifer Authority (the "EAA"), to Honorable Greg Abbott, Attorney General of Texas, at 5 (Oct. 21, 2008) (on file with the Opinion Committee) [hereinafter EAA Brief].

[3]*See* Act of May 30, 1993, 73d Leg., R.S., ch. 626, 1993 Tex. Gen. Laws 2350; *as amended by* Act of May 16, 1995, 74th Leg., R.S., ch. 524, 1995 Tex. Gen. Laws 3280; Act of May 29, 1995, 74th Leg., R.S., ch. 261, 1995 Tex. Gen. Laws 2505; Act of May 6, 1999, 76th Leg., R.S., ch. 163, 1999 Tex. Gen. Laws 634; Act of May 25, 2001, 77th

(continued...)

permits or entering into contracts for recharge facilities, such as Medina Lake Dam, that were constructed prior to September 1, 1993, the Act's effective date. Request Letter at 2; *see also* EAA Act § 4.02 (establishing the Act's effective date). The request letter also asked about the EAA's authority to define the phrase "unreasonably deny" as it appears in section 1.44 of the Act concerning recharge-and-retrieval contracts with political subdivisions. EAA Act § 1.44(b); Request Letter at 2.

Concerned about likely increases in withdrawals of water from the aquifer and the potential effects of droughts, the Legislature promulgated the Act creating the EAA to provide for the management and regulation of groundwater withdrawals in order to sustain diverse economic and social interests dependent on water from the aquifer. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 623 (Tex. 1996); *see also* EAA Act § 1.01 (stating that a regional management district is "required for the effective control of the resource to protect terrestrial and aquatic life, domestic and municipal water supplies, the operation of existing industries, and the economic development of the state"). To achieve its purpose, the Act mandates an aquifer-wide cap on non-exempt withdrawals, which was initially established at 450,000 acre feet per year. *Barshop*, 925 S.W.2d at 624; EAA Act § 1.14.[4] The Act further provides that no water may be withdrawn from the aquifer without a permit issued by the EAA, with exceptions not pertinent here. EAA Act § 1.15(b). The Act requires this permit system to generally favor historic existing users. *Id.* §§ 1.15–.16; *see generally Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 731 (Tex. 2002).

The Act creates the EAA as a "conservation and reclamation district, . . . a governmental agency and a body politic and corporate." EAA Act § 1.02(a). It has all the powers and duties of an authority created under article XVI, section 59 of the Texas Constitution, including authority under chapter 36 of the Water Code. *Id.* § 1.08(a).[5] The Act gives the EAA the powers "necessary

---

[3](...continued)
Gen. Laws 2505; Act of May 6, 1999, 76th Leg., R.S., ch. 163, 1999 Tex. Gen. Laws 634; Act of May 25, 2001, 77th Leg., R.S., ch. 1192, 2001 Tex. Gen. Laws 2696; Act of May 27, 2001, 77th Leg., R.S., ch. 966, §§ 2.60–.62, 6.01–.05, 2001 Tex. Gen. Laws 1991, 2021–22, 2075–76; Act of June 1, 2003, 78th Leg., R.S., ch. 1112, § 6.01(4), 2003 Tex. Gen. Laws 3188, 3193; Act of May 23, 2007, 80th Leg., R.S., ch. 510, 2007 Tex. Gen. Laws 900; Act of May 28, 2007, 80th Leg., R.S., ch. 1351, §§ 2.01–.12, 2007 Tex. Gen. Laws 4612, 4627–34; Act of May 28, 2007, 80th Leg., R.S., ch. 1430, §§ 12.01–.12, 2007 Tex. Gen. Laws 5848, 5901–09 (hereinafter the EAA Act or the Act).

[4]As enacted, the aquifer-wide cap on permitted withdrawals was established at 450,000 acre feet annually through December 31, 1997 and at 400,000 acre feet thereafter. Act of May 30, 1993, 73d Leg., R.S., ch. 626, § 1.14(b)–(c), 1993 Tex. Gen. Laws 2350, 2360. In 2007, the statute was amended to provide that permitted withdrawals may not exceed or be less than 572,000 acre feet, being the sum of all regular permits issued or those for which an application had been filed and issuance by the EAA was pending on January 1, 2005. Act of May 28, 2007, 80th Leg., R.S., ch. 1351, § 2.02, 2007 Tex. Gen. Laws 4612, 4627; Act of May 28, 2007, 80th Leg., R.S., ch. 1430, § 12.02, 2007 Tex. Gen. Laws 5848, 5902.

[5]The EAA Act's grant of authority expressly includes chapters 50, 51, and 52, Water Code. EAA Act § 1.08(a). The Legislature repealed chapter 52 of the Water Code in 1995, placing many of its provisions in chapter 36. *See* Act
(continued...)

to manage, conserve, preserve, and protect the aquifer and to increase the recharge of, and prevent the waste or pollution of water in, the aquifer." *Id.* § 1.08; *see also* TEX. WATER CODE ANN. § 36.0015 (Vernon 2008) (stating purposes of groundwater districts). The Act requires the EAA to "adopt rules necessary to carry out the authority's powers and duties." EAA Act § 1.11(a). *See also* TEX. WATER CODE ANN. §§ 36.0115 (stating that the state's preferred method of groundwater management is through rules developed, adopted, and promulgated by a water district in accordance with chapter 36), 36.101(a) (authorizing a groundwater district to make and enforce rules including rules to provide for conserving, preserving, protecting, and recharging of the groundwater for certain purposes). The Act also grants the EAA broad authority to enter into contracts. EAA Act § 1.11(d)(2). More specifically, section 1.44(a) of the Act authorizes the EAA to contract with any political subdivision of the state to provide for "artificial recharge" of the aquifer for the subsequent retrieval of the water by the political subdivision, and states further that the EAA may not unreasonably deny a request for such a contract. *Id.* § 1.44. Retrieval under such a recharge and retrieval contract is not subject to the aquifer-wide cap. *Id.* § 1.44(d).

The EAA has adopted rules to implement the Act,[6] including rules related to aquifer recharge, storage, and recovery projects. EAA Rules §§ 711.240–.272 (subchapter J). The EAA's recharge rules authorize an entity to obtain a permit to construct or modify an aquifer recharge facility or a recharge and storage project, and a recharge recovery permit allowing an entity to recover water previously recharged and stored in the aquifer. *Id.* §§ 702.1(6), (51), 711.240–.272. The rules provide that the EAA will not issue a permit for aquifer recharge "for any structure, facility, or works constructed prior to September 1, 1993." *Id.* § 711.245(a).[7] But the rules allow the EAA to issue permits for a facility constructed prior to September 1, 1993 if the facility is modified to increase the amount of recharge. *Id.* § 711.245(b).

Your predecessor's first question was whether the EAA has authority to adopt rules that deny recharge, storage, and recovery permits for recharge facilities built before September 1, 1993. Request Letter at 2. Because EAA rules do not deny such permits to recharge facilities that will increase or augment the volume of its recharge beyond historic recharge levels, EAA Rules

---

[5](...continued)
of May 29, 1995, 74th Leg., R.S., ch. 933, §§ 2, 6, 1995 Tex. Gen. Laws 4673, 4679, 4701. Chapter 36 applies to "any district or authority created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution, that has the authority to regulate the spacing of water wells, the production from water wells, or both." *See* TEX. WATER CODE ANN. § 36.001(1) (Vernon 2008). Thus, a court has held, "[b]ased on the plain language of the statute, . . . that Chapter 36 of the Water Code applies to the [EAA]." *In re Edwards Aquifer Auth.*, 217 S.W.3d 581, 588 (Tex. App.—San Antonio 2006, orig. proc.).

[6]*See* Edwards Aquifer Authority Rules (rev. July 22, 2008), *available at* http://edwardsaquifer.org/pdfs/rules/Final_Rules.pdf (last visited Apr. 13, 2009) [hereinafter EAA Rules].

[7]*See also* EAA Rules §§ 702.1(88) (defining "historic recharge" as annual recharge estimated to occur due to natural features and artificial structures or facilities constructed prior to September 1, 1993); 711.247 (stating that recharge and storage permits and retrieval permits will not be granted for historic recharge).

§ 711.245(b), the inquiry may be restated as whether the EAA has the authority to promulgate rules that prohibit recharge, storage, and retrieval permits for a facility built before September 1, 1993, that does not undertake to increase or augment its historic recharge.

As a political subdivision created under article XVI, section 59 of the Texas Constitution, the EAA has only those powers expressly granted by statute and those necessarily implied as incident to the express powers. *Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Commc'n Corp.*, 49 S.W.3d 520, 536 (Tex. App.—Corpus Christi 2001, pet. denied); *see also Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940) (holding that a fresh water supply district "may exercise only such powers" as the Legislature has expressly delegated to it "or which exist by clear and unquestioned implication"). As discussed above, the Act requires the EAA to "adopt rules necessary to carry out the authority's powers and duties." EAA Act § 1.11(a). The powers expressly granted the EAA include the powers necessary "to *increase* the recharge of . . . the aquifer." *Id.* § 1.08(a) (emphasis added); TEX. WATER CODE ANN. § 36.101(c) (Vernon 2008) (authorizing groundwater districts "to make and enforce rules, including rules . . . to provide for conserving, preserving, protecting, and recharging" groundwater sources). The EAA itself may "own, finance, design, construct, operate, or maintain recharge facilities," but only "if the recharge is made to *increase* the yield of the aquifer," among other requirements. EAA Act § 1.45 (emphasis added). Other provisions of the Act concern recharge projects "to be constructed," indicating new or additional recharge. *Id.* § 1.11(f)–(f–2). But the Act is silent about recharge from facilities in existence at the time of the Act's passage, and no provision requires the EAA to take specific action with respect to such recharge facilities.

The EAA's recharge rules generally provide that the EAA will not issue a permit for aquifer recharge "for any structure, facility, or works constructed prior to September 1, 1993." EAA Rules § 711.245(a); *see also* EAA Act § 4.02 (establishing September 1, 1993 as the Act's effective date). The rules contain an exception, however, allowing permits for such existing facilities that are modified to increase the amount of recharge. EAA Rules § 711.245(b). The stated purpose of the EAA's recharge rules "is to promote the augmentation and management of waters recharged into the Aquifer." *Id.* § 711.241. In furtherance of this purpose, the EAA recharge, storage, and retrieval permit rules seek to distinguish between recharge facilities that will add to or increase the recharge of the aquifer and existing facilities that will merely continue historic recharge. *Id.* §§ 702.1(6), (51), 711.240–.272. Thus, given the EAA's authority to "adopt rules necessary to carry out its powers and duties," including particularly the "power to increase the recharge of the aquifer," a court would likely conclude that the Act authorizes the EAA to promulgate rules prohibiting recharge and withdrawal permits for recharge facilities that were constructed prior to September 1, 1993 that will not increase the amount of the facility's recharge.

The request letter also asked about the EAA's authority to promulgate rules that limit its contracts with political subdivisions for recharge facilities constructed before September 1, 1993. Request Letter at 2. Section 1.44 of the Act authorizes the EAA to enter into cooperative contracts with political subdivisions to recharge water into the aquifer and to recover the measured amount actually injected or artificially recharged, less certain amounts to account for spring discharge and EAA compensation. EAA Act § 1.44(a), (c)–(d). Similarly, section 711.269(a) of the EAA rules

authorizes the EAA to enter into a cooperative contract with a political subdivision that would allow the political subdivision to recharge and store water in the aquifer and subsequently recover the water. EAA Rules § 711.269. The rule further provides that such an interlocal contract "is deemed to be an Aquifer recharge and storage permit and a recharge recovery permit" which, according to BMA and the EAA, makes such a contract subject to the September 1, 1993 limitations. *Id.* § 711.269(b).[8] In effect, the request letter asks whether section 711.269 of the EAA rules is consistent with section 1.44 of the Act in that the rule does not to apply to a political subdivision owning a facility, such as a dam, that does not take measures to increase the facility's historic recharge or otherwise add new recharge.

Section 1.44 of the Act provides in part:

> (a)   The authority may contract with any political subdivision of the state under Chapter 791, Government Code, to provide for artificial recharge of the aquifer, through injection wells or with surface water subject to the control of the political subdivision, for the subsequent retrieval of the water by the political subdivision or its authorized assignees for beneficial use within the authority.

> . . . .

> (c)   The political subdivision causing artificial recharge of the aquifer is entitled to withdraw during any 12-month period the measured amount of water actually injected or artificially recharged during the preceding 12-month period, as demonstrated and established by expert testimony, less an amount determined by the authority to:

> > (1)   account for that part of the artificially recharged water discharged through springs; and

> > (2)   compensate the authority in lieu of users' fees.

> (d)   The amounts of water withdrawn under this section are not subject to the maximum total permitted withdrawals provided by Section 1.14 of this article.

EAA Act § 1.44.

---

[8]*See* BMA Brief at 19 (stating "if interlocal contracts are deemed to be permits, and if permits for recharge facilities constructed prior to September 1, 1993, are prohibited, then interlocal contracts with these facilities may also be deemed prohibited"); EAA Brief at 9 (stating that because the interlocal cooperative contracts are deemed to be a recharge and storage permit and a retrieval permit, and such permits are not available for facilities constructed prior to September 1, 1993 that are not altered after that date, "logically the [EAA] could not enter into an interlocal contract for this historical recharge").

In construing a statute, courts strive to discern and give effect to the Legislature's intent. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). Courts derive legislative intent from an act as a whole, not from isolated portions. *Id.* Also, courts construing a statute consider, among other things, a statute's objectives and the consequences of a particular construction. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). The language of section 1.44, when viewed in light of the Act as a whole, indicates that it was intended to authorize contracts for new recharge-and-retrieval projects, not to entitle a political subdivision to begin claiming existing recharge attributable to a facility constructed prior to the Act's passage. Section 1.44, subsection (a) authorizes a contract with a political subdivision "to provide for" recharging water into the aquifer that may subsequently be retrieved, suggesting a contract for recharge that was not yet occurring. EAA Act § 1.44(a). Such a reading is bolstered by section 1.44, subsections (c) and (d), which entitle a political subdivision to subsequently retrieve and use an amount of water comparable to the amount of recharge it has provided by contract, without regard to the aquifer-wide cap on withdrawals. *Id.* § 1.44(c), (d). If section 1.44 is read to apply only to new or increased recharge, then the provisions allowing a political subdivision to subsequently retrieve such recharge without regard to the aquifer-wide cap should have little or no adverse effect on the level of water in the aquifer or on the rights of permit holders subject to the cap. If, however, section 1.44 were interpreted in a manner that authorized a political subdivision to begin reclaiming the historical recharge associated with an existing facility without regard to the aquifer-wide cap, it would negatively affect the amount of water available for allocation under the statutory permit system.[9] In light of the Act's purpose of managing groundwater withdrawals to sustain diverse interests dependent on the aquifer, sections (c) and (d) indicate that section 1.44 was not intended to entitle a political subdivision owning an existing facility to begin retrieving the recharge it had historically provided. *See* EAA Act § 1.01; *Barshop*, 925 S.W.2d at 623.

The EAA has taken the position, through its rules, that recharge-and-retrieval contracts are not authorized or required for recharge facilities that will not increase recharge. EAA Rules §§ 711.247, .269. The stated purpose of the rules for recharge-and-retrieval contracts, as well as for recharge and storage permits and retrieval permits, is "to promote the augmentation and management of waters recharged into the Aquifer." *Id.* § 711.241. As explained above, the EAA has authority to promulgate rules necessary to implement its powers and duties. EAA Act § 1.11. The Act expressly grants the EAA powers "necessary to manage, conserve, preserve, and protect the aquifer and to increase the recharge" of water in the aquifer. *Id.* § 1.08. *see also* TEX. WATER CODE ANN. § 36.0015 (Vernon 2008) (stating that groundwater districts are created to "provide for the conservation, preservation, protection, recharging . . . of groundwater and groundwater reservoirs"). As a result, a court would likely conclude that the EAA's powers to conserve, preserve, and protect the aquifer and to increase its recharge support a rule that limits cooperative recharge-and-retrieval contracts under section 1.44 to political subdivisions that will provide new or additional recharge.

---

[9]The annual recharge due to the Medina Lake Dam system has been estimated in amounts ranging from about 37,000 to over 60,000 acre-feet. *See* BMA Brief at 6; EAA Brief at 4–5.

It has been suggested that the EAA rules block funds that BMA needs to make necessary repairs, and if the repairs are not made, aquifer recharge will inevitably decline.[10] Generally, courts do not consider the efficacy and wisdom of a governmental agency's rules. *See Pickens v. Tex. R.R. Comm'n*, 387 S.W.2d 35, 45 (Tex. 1965) (stating that "it is not the function of the Court to substitute itself for [an administrative agency exercising delegated authority] in determining the wisdom or advisability of a particular order"). Moreover, the argument raises questions about the facts supporting such rules that are appropriate for judicial determination but which cannot be resolved by an attorney general opinion. *See Guitar Holding Co. v. Hudspeth County Underground Water Conservation Dist. No. 1*, 263 S.W.3d 910, 917 (Tex. 2008) (holding that challenges to a local groundwater conservation district's rules are generally reviewed under the substantial evidence rule, although district authority is reviewed de novo); Tex. Att'y Gen. Op. No. GA-0459 (2006) at 3–4 (fact questions cannot be investigated and resolved in an attorney general opinion).]

The final question asked is whether the EAA is authorized to "narrowly define (or define at all)," the phrase "unreasonably deny" that appears in section 1.44 of the Act. Request Letter at 2. Section 1.44(b) provides that the EAA "may not unreasonably deny a request to enter into a cooperative contract under this section if the political subdivision agrees to" certain conditions. EAA Act § 1.44(b). The question asserts that the EAA has "narrowly" defined the phrase in section 711.269(d) of the EAA rules, which provides that a denial is unreasonable if the board fails to authorize a contract that has been negotiated, reduced to final form, and complies with the Act and EAA rules. Request Letter at 2 (citing EAA Rules § 711.269(d)).

The Act does not define the phrase "unreasonably deny" or any comparable terms. While the EAA's construction of the Act is subject to de novo review by the courts, *Bragg*, 71 S.W.3d at 734, that standard of review necessarily assumes the EAA has authority to construe the Act in the first instance. *Id.* Under the EAA's authority to enforce the Act and to promulgate rules necessary to implement the Act, the EAA may include its interpretation of undefined terms in its rules as necessary in order to implement the Act. EAA Act § 1.11(a)–(c). Accordingly, a court is likely to conclude that the EAA may include its construction of undefined terms in its rules, subject to de novo review by the courts.

Although the request letter characterizes section 711.269(d) of the EAA rules as a "narrow" definition of the phrase "unreasonably deny," it is not entirely clear that the subsection attempts to define the phrase or, if it does, that it has defined the phrase narrowly. Request Letter at 2. The subsection describes a set of circumstances that constitute an unreasonable denial. EAA Rules § 711.269(d). The subsection does not suggest that a denial cannot be deemed unreasonable for other reasons. Moreover, the rule's requirement that a contract request comport with the Act and EAA rules is supported by the EAA's express authority to enforce compliance with the Act and its rules. EAA Act § 1.11(a)–(c). By requiring a contract to comply with the rules, the subsection does not purport to preclude a challenge to a denial that is based on another rule or part of a rule that is itself invalid. Thus, a court would likely conclude that the EAA has the authority under section 1.11(a)–(c) of the Act to promulgate section 711.269(d) of the EAA rules.

---

[10]Reply Brief filed on behalf of the BMA, at 1–2 (Jan. 22, 2008) (on file with the Opinion Committee).

## S U M M A R Y

A court would likely conclude that the Edwards Aquifer Authority may promulgate rules prohibiting recharge and withdrawal permits for or contracts with recharge facilities that were constructed prior to September 1, 1993, that will not increase the amount of the facility's recharge.  A court would also likely conclude that the Edwards Aquifer Authority has authority to promulgate a rule providing that the denial of an interlocal contract under certain circumstances is unreasonable.

Very truly yours,

GREG ABBOTT
Attorney General of Texas


ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee