Affirmed and Majority and Concurring Opinions filed September 30 , 2004









Affirmed
and Majority and Concurring Opinions filed September 30 , 2004.

 

 

                                                                                                                                                            

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00508-CV

____________

 

STEPHEN G.
RUDISILL, RONALD B. COOLLEY, AND SLAWOMIR Z. SZCZEPANSKI, Appellants

 

V.

 

ARNOLD WHITE &
DURKEE, P.C.,
Appellee

 



 

On Appeal from the 189th
District Court

Harris County, Texas

Trial Court Cause No. 00-47589

 



 

M A J O R I T Y   O P I N I O N

Appellants filed this declaratory judgment
action seeking a declaration of their rights following the combination of two
law firms, Arnold White & Durkee, P.C. (“AWD”), and Howrey & Simon
(“H&S”), which combined to form Howrey Simon Arnold & White, L.L.P.
(“HSAW”).  Appellants, Stephen Rudisill,
Ronald Coolley, and Slawomir Szczepanski, were AWD shareholders at the time of
the combination.  The trial court granted
summary judgment in favor of AWD.  We
affirm.

 








I. 
Background

In 1999, AWD and H&S entered
negotiations to combine their operations. 
AWD’s board of directors noticed a shareholders’ meeting for January 7,
2000, for the purpose of voting on the proposed combination.  The notice stated that a two-thirds majority
of Class B and Class C shares would be required for passage.  Appellants, each being a holder of Class B or
Class C shares, submitted written objections to the combination prior to the
meeting.  Appellants then voted against
the combination, which was approved by a two-thirds vote.

Under the terms of
the Combination Agreement, all of AWD’s assets not specifically excluded were
transferred to H&S.  In exchange, AWD
became a “Level II Partner” in H&S, which subsequently changed its name to
HSAW.  The only excluded assets were
three vacation condominiums, two insurance policies, and several automobile
leases.  Closing and transfer of assets
occurred on or after January 31, 2000.

AWD shareholders were eligible to become
partners in HSAW by signing the Partnership Agreement.  Appellants declined to sign the agreement,
ceased working for AWD, and filed the present action seeking a declaration of
their rights.  Both sides moved for
summary judgment.  The trial court
granted AWD’s motion without stating the basis therefor.  On appeal, appellants’ three issues track
their three causes of action.  They
contend that (1) they are entitled to dissenter’s rights of redemption under
the Texas Business Corporation Act (“TBCA”), (2) if they are not entitled to
dissenter’s rights, they should be reinstated to their full rights as
shareholders, and (3) alternatively, they have the right to redeem their shares
pursuant to the AWD Redemption Agreement.

II. 
Standard of Review








Under the traditional standard for summary
judgment, the movant has the burden to show that there is no genuine issue of
material fact and that judgment should be granted as a matter of law.  Tex.
R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999). 
In reviewing a grant of summary judgment, we take as true all evidence
favorable to the nonmovant and make all reasonable inferences in the
nonmovant’s favor.  Nixon v. Mr.
Property Mgmt. Co., 690 S.W.2d 546, 549 (Tex. 1985).  A defendant, as movant, is entitled to
summary judgment if it (1) disproves at least one element of the plaintiff’s
theory of recovery or (2) pleads and conclusively establishes each essential
element of an affirmative defense, thereby rebutting the plaintiff’s cause of
action.  Am. Tobacco Co. v. Grinnell,
951 S.W.2d 420, 425 (Tex. 1997).  A
plaintiff is entitled to summary judgment only if he conclusively proves all
essential elements of his claim.  Johnston
v. Crook, 93 S.W.3d 263, 273 (Tex. App.—Houston [14th Dist.] 2002, pet.
denied).  When reviewing cross‑motions
for summary judgment, we consider both motions and render the judgment that the
trial court should have rendered.  Coastal Liquids Transp., L.P. v. Harris County
Appraisal Dist., 46 S.W.3d 880, 884 (Tex. 2001).[1]

The relevant facts are generally
undisputed.  Indeed, at oral argument,
both sides represented that there was no material issue of fact because there
is no dispute regarding the facts of the case. 
The only dispute is a legal one: how to apply the relevant portions of
the TBCA to the facts.  To the extent the
issues presented in this appeal involve statutory construction and application
of the statute to undisputed facts, we determine the issues as a matter of
law.  Gramercy Ins. Co. v. Auction
Fin. Program, Inc., 52 S.W.3d 360, 363 (Tex. App.—Dallas 2001, pet.
denied).








In interpreting a statute, whether or not
we consider it ambiguous, we may consider, among other things: the object
sought to be obtained; the circumstances of the statute’s enactment;  the legislative history;  the common law or former statutory
provisions, including laws on the same or similar subjects; the consequences of
a particular construction; administrative construction of the statute; and the
title, preamble, and emergency provision. 
Tex. Gov’t Code Ann. §
311.023 (Vernon 1998); Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493
(Tex. 2001).  In examining the relevant
portions of the TBCA, we focus primarily on the language of the statute itself
and, to a lesser extent, the legislative history, including the interpretive
commentaries attached to each section.[2]  We consider a question of statutory
interpretation under a de novo standard of review.  Bragg v. Edwards Aquifer Auth., 71
S.W.3d 729, 734 (Tex. 2002).[3]

III. 
Dissenter’s Rights

In their first issue, appellants contend
that the trial court erred in granting summary judgment against them because
they are entitled to dissenter’s rights under the TBCA, including the right of
redemption for the “fair value” of the shares.

A. 
The Texas Business Corporation Act

The TBCA provides two procedures for
authorizing a sale when all or substantially all of the property and assets of
a corporation are to be sold.  See Tex. Bus. Corp. Act arts. 5.09, 5.10
(Vernon 2003).  The procedure that is
followed is generally determined by whether the sale is deemed “in the usual
and regular course of business of the corporation.”  Id. 
A sale is considered in the usual and regular course of business if,
after the sale, “the corporation shall, directly or indirectly, either continue
to engage in one or more businesses or apply a portion of the consideration
received in connection with the transaction to the conduct of a business in
which it engages following the transaction.” 
Id. art. 5.09(B).








A sale in the usual and regular course of
business can be authorized by the board of directors without shareholder
approval.  Id. art. 5.09(A).  If a sale is not in the usual and regular
course of business, the board must obtain approval from two-thirds of the
outstanding shares entitled to vote on the proposed sale.  Id. art. 5.10(A)(4).[4]  Under the latter scenario, dissenters to the
sale (i.e., shareholders who voted against the sale but lost) have
certain rights, including the right to redeem their shares for “fair
value.”  Id. arts. 5.11, 5.12.  AWD generally followed the procedure for a
sale that was not made in the usual and regular course of business and obtained
a two-thirds majority favoring the sale.  See id. art. 5.10.  Notwithstanding that the procedure utilized
is inconsistent with its position at trial and on appeal, AWD contends that
appellants are not entitled to dissenter’s rights because the sale was in the
usual and regular course of business.

According to the 1996 comment to article
5.09, the statute “was amended in 1987 to substantially expand the types of
transactions that would not constitute a disposition of all or substantially
all assets . . . .”  Id. art.
5.09, cmt. of Bar Comm.—1996.  The 1987
amendment, which added section B to the article, provided that a sale is in the
usual and regular course of business if, after the sale, “the corporation
shall, directly or indirectly, either continue to engage in one or more
businesses or apply a portion of the consideration received in connection with
the transaction to the conduct of a business in which it engages following the
transaction.”  Id. art.
5.09(B).  The comment goes on to state,
“In effect, no disposition of assets by a corporation will require shareholder
approval unless the corporation liquidates and ceases to do business after the
disposition.”[5]








The House Committee on Business and
Commerce prepared an analysis of the proposed amendment.  According to this analysis, section B was
added 

to redefine what
constitutes the disposition of all or substantially all of the assets of a
corporation.  Cases in other
jurisdictions have held or implied that disposition of assets, not normally
considered to be included by the phrase “all or substantially all” required
shareholder approval under statutes similar to TBCA articles 5.09 and
5.10.  The comment to RMBCA [the revised
model code] section 12.02 rejects the holding/implication in these cases, but
the RMBCA itself lacks any statutory language that would dictate the opposite
result.  The amendatory language is
similar to that in section 121.E of the Louisiana Business Corporation Law, in
that shareholder approval is not required if a corporation engages in a
business or applies any assets received from a sale in the business of the
corporation.

House Comm. on Bus. &
Commerce, Bill Analysis, Tex. H.B. 418, 70th Leg., R.S. (1987).[6]

Clearly, the 1987 amendment was intended
to “substantially expand” the types of transactions that would not require
shareholder approval.  See, e.g., Tex. Bus. Corp. Act art. 5.09, cmt. of
Bar Comm.—1996.  In summary, a sale is
made in the usual and regular course of business so long as the corporation is
not liquidated and continues in some business, either directly or indirectly,
after the sale.








B. 
AWD Post-Combination

Under appellants’ first issue, we examine
whether AWD (1) continued to exist as a corporation after the combination and
(2) continued directly or indirectly in the legal services business.[7]  AWD contends that it is still a viable
corporation in the legal services business as a partner in HSAW.  We agree.

1. 
AWD’s Evidence

Uncontroverted summary judgment evidence
established that, after the combination, AWD continued to be a Texas corporation in good
standing with the Texas Comptroller’s office, and it continued to have
shareholders, employees, directors, officers, and annual meetings.[8]  Evidence further established that AWD
maintained its own financial and payroll records and filed separate federal and state tax
returns.  As a Level II Partner in HSAW, AWD
enjoyed voting rights and profits commensurate with its percentage share of the
partnership.[9]  AWD received Schedule K-1s from HSAW, evidencing profit or loss
from the partnership.  For a year and a
half after the combination, it continued to have a separate office in
Chicago.  For the first year, only AWD
shareholders were allowed to share in any contingency fees generated by AWD or
its shareholders.[10]








2.  Appellants’ Counter
Arguments

Appellants contend that, in reality, AWD
was subsumed in the resulting combination and that the remaining corporate
structure is merely a shell that does not engage in any business.  They base this argument primarily on the
assertion that AWD could not remain in the legal services business because it
transferred all of the assets it required for that business.[11]  First, we note that the TBCA contains no
requirement that a company retain or receive any physical assets in order for
it to continue in business after transferring all or substantially all of its
assets.  Indeed, article 5.09 permits a
sale in the usual and regular course of business to be made for such considerations
as are authorized by the board of directors and “may consist in whole or in
part of money or property, real or personal, including shares of any other
corporation, domestic or foreign.”  Tex. Bus. Corp. Act art. 5.09.  Thus, the drafters of the TBCA envisioned
that a corporation could continue in business despite transferring all of its
assets and receiving only cash or corporate stock in return.  

The language of article 5.09 is expressly
nonexclusive in listing the types of considerations that may be exchanged for a
corporation’s assets, and there is a logical inference that ownership in a
partnership would meet the statutory requirements.  See 25 Bulletin of
the Section on Corporation, Banking & Business Law, State Bar of Texas
12 (asserting
that a drop-down of
assets by a corporation to a partnership would not require shareholder approval
under the TBCA); see also supra n.2. 
Appellants do not argue that the partnership interest held by AWD in
HSAW is not a valuable asset.[12]  








It is clear that AWD remained in the legal
services business, at least indirectly, in that (1) its shareholders and
employees continued to practice law under the auspices of HSAW, and (2) it held
an ownership interest in HSAW, which unquestionably continues directly in that
business.  Accordingly, the summary
judgment evidence supports the conclusion that AWD is still a viable corporation
directly or indirectly continuing in the legal services business as a matter of
law.  Therefore, the sale was made in the
usual and regular course of business.  See
Tex. Bus. Corp. Act art.
5.09(B).

Additionally, appellants contend that
because AWD obtained shareholder approval under TBCA article 5.10, and thus
established immunity for the directors under article 5.12(G), it could not
subsequently deny appellants’ rights as dissenters under article
5.11(A)(2).  Tex. Bus. Corp. Act arts. 5.10, 5.11(A)(2), 5.12(G).  Appellants have misread the statute.  Article 5.12(G) expressly limits its scope to
corporate actions listed in article 5.11. 
Id. art. 5.12(G).[13]  The only action listed in article 5.11 that
appellants contend applies here is subsection 2, which provides that shareholders have the
right to dissent to a sale of all or substantially all of a corporation’s
assets “if special authorization of the shareholders is required.”  Id. art. 5.11(A)(2) (emphasis
added).  In this case, special
authorization of the shareholders was not required because AWD continued in
business after the transfer or sale of all or substantially all of AWD’s
assets.  Even though AWD generally
followed the procedures under article 5.10, it was not required to do
so; thus, appellants are not entitled to dissenter’s rights.








Appellants further suggest that articles
5.09 and 5.10 are both mandatory; i.e., a sale in the usual and regular
course of business must be accomplished under 5.09, and a sale not in
the usual and regular course of business must be accomplished under
5.10.  The commentary to these articles
makes it clear that the procedures under 5.10 are mandatory, while the
procedures under 5.09 are not.  The
commentary states: “Article 5.10 requires special authorization of the
shareholders for a sale . . . of all or substantially all of a corporation’s
assets if not made in the usual and regular course of business,” and “Article
5.09 permits a sale . . . of all or substantially all the assets when
made in the usual and regular course of business to be made upon authorization
of the board of directors.”  Tex. Bus. Corp. Act art. 5.09, cmt. of Bar Comm.—1955; art. 5.10,
cmt. of Bar Comm.—1955 (emphasis added). Because AWD was not required to follow
the procedures in article 5.10 in selling its assets to H&S, appellants are
not entitled to dissenter’s rights.   In
sum, AWD continued to exist as a corporation after the combination, and it
continued, at least indirectly, in the business of providing legal
services.  Accordingly, we overrule
appellants’ first issue.

IV. 
Shareholder Status

In their second issue, appellants contend
that, if they are not entitled to dissenter’s rights, they should be restored
to their position as shareholders and given their shares of any corporate
profits distributed in the interim.  AWD
contends that appellants are not entitled to any post-combination distributions
because their employment with AWD was terminated prior to any such
disbursements, thus triggering automatic redemption under the AWD Redemption
Agreement.

Appellants first contend that the
operation of TBCA article 5.13 restores their rights as shareholders.  Tex.
Bus. Corp. Act art. 5.13.  Article
5.13 provides that once a shareholder claims dissenter’s rights under article
5.12, he or she may not exercise the rights of a shareholder.  Id. art. 5.13(A).  If, however, a court determines that the
shareholder is not entitled to dissenter’s rights, the shareholder’s status
shall be restored, and the shareholder shall be entitled to receive any
distributions made in the interim.  Id.
art. 5.13(C).  Appellants contend that,
if this Court decides that they are not entitled to dissenter’s rights, each
should have his shareholder status restored. 
We disagree with appellants’ contention. 
Nothing in article 5.13 suggests that a former shareholder can regain
his or her shares based on an unsuccessful claim of dissenter’s rights if
shareholder status has otherwise been terminated.








The AWD Redemption Agreement provides that
upon termination of employment with the corporation “for any reason,” a
shareholder loses his or her rights, and the shares are to be redeemed “as of
the end of the last day of the Shareholder’s employment.”[14]  Each of the appellants left their employment
with AWD some time in late January or early February 2000, which was around the
time the combination was completed.[15]  Although it is unclear why the appellants’
employment was terminated, under the Redemption Agreement, the reason is
irrelevant.  As stated, if “for any
reason” employment is terminated, the shares are redeemed as of the end of that
very day.  Thus, appellants’ shares are
considered redeemed as of the day they left employment.  It follows that, once redeemed, shares are
not susceptible of revival and former shareholders are not entitled to
reinstatement under the TBCA.

Appellants additionally argue that their
shares could not be considered to have been redeemed because they have not
received payment for them.  Under the
Redemption Agreement, redemption occurs on the day of termination irrespective
of whether payment was tendered on that day. 
The agreement provides a payment schedule, and it is clear that the lack
of immediate payment was not intended to mean that the shareholder retains the
shares or the attendant rights of ownership until the full amount (or any
amount) is actually paid.  Furthermore,
it is undisputed that AWD has tendered payment to appellants, and appellants
have thus far refused to accept it.[16]  Appellants cannot refuse payment and then
argue that their shares have not been redeemed because they have not received
payment.








There is no evidence that appellants
failed to receive any distributions that occurred before termination of their
employment and the consequent redemption of their shares.[17]  Because any distributions occurred after
appellants left the firm, they are not entitled to participate in the
distributions.  The trial court did not
err in granting summary judgment against this alternative claim.  Appellants’ second issue is overruled.

V. 
Redemption

In their third issue, appellants contend
that even if they are not entitled to dissenter’s rights or reinstatement, they
are entitled to payment under the AWD Redemption Agreement.  Appellants’ third cause of action specifically
sought “a declaration that plaintiffs are entitled to enforce their rights
under the Redemption Agreement.”  AWD
contends that because it does not deny that appellants have a right to
redemption under the agreement and, in fact, has tendered payment pursuant to
the agreement, the third cause of action does not present a justiciable
controversy.  We agree.

A claim alleging a lack of a justiciable controversy
challenges the plaintiff’s standing to sue and, consequently, the court’s
subject matter jurisdiction over the cause of action.  See Tex. Ass’n of Bus. v. Tex. Air Control
Bd., 852 S.W.2d 440, 446 (Tex. 1993). 
Subject matter jurisdiction is a question of law that we review de
novo.  Mayhew v. Town of Sunnyvale,
964 S.W.2d 922, 928 (Tex. 1998).  For a
plaintiff to have standing and a court to have jurisdiction in a declaratory
judgment action, there must be a “real controversy between the parties [that]
will be actually determined by the judicial declaration sought.”  Tex. Ass’n of Bus., 852 S.W.2d at 446.








In the trial court and on appeal, AWD has
consistently maintained that appellants are entitled to payment for their
shares under the Redemption Agreement. 
In fact, two months before suit was filed, AWD informed appellants’
attorney by mail that “[y]our clients are still entitled to their contractual
rights under the AWD . . . Redemption Agreement.”  AWD’s letter listed the amounts due to each
of the appellants and stated that AWD was prepared to make the payments as
listed.  Appellants do not argue that the
amounts are in error, nor have they pled a breach of contract action based on
any delay in making payments.  Because
AWD has consistently and expressly acknowledged appellants’ rights under the Redemption
Agreement, a justiciable controversy does not exist on this issue.  Therefore, judgment may not issue to declare
those rights. See Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex.
1995).[18]  Appellants’ third issue is overruled.

The trial court’s judgment is affirmed.

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Majority and Dissenting Opinions filed September 30, 2004.

Panel
consists of Chief Justice Hedges and Justices Frost and Guzman. (Frost, J.
Concurring).











[1]  There is some
dispute as to whether the trial court actually considered appellants’ motion
and whether the motion sought a final judgment; however, because we hold that
the trial court properly granted AWD’s motion, we need not decide whether
appellants’ motion is reviewable.





[2]  The
interpretive commentaries were written by committees of the State Bar of Texas
and not by legislative entities.  They
are particularly helpful as legislative history, however, because the
committees originally proposed and drafted the language that became the TBCA
and subsequently amended it.  The
committees based their work largely on the Model Business Corporation Act.  See, e.g., Tex. Bus.
Corp. Act art. 2.01, cmt. of Bar Comm.—1955.





[3]  The parties do
not cite, and we were unable to find, any published cases that have interpreted
the sections of the TBCA at issue in this appeal.





[4]  As will be
discussed in detail below, when a sale is in the usual and regular course of
business, article 5.09 permits the sale to be made upon authorization of
the board only, but when a sale is not made in the usual and regular course of
business, special authorization by the shareholders must be obtained
under article 5.10.  Tex. Bus.
Corp. Act art. 5.09, cmt. of Bar Comm.—1955; art.
5.10, cmt. of Bar
Comm.—1955.





[5]  This
interpretation is bolstered by a 1987 State Bar article written by two members
(including the chairman) of the committee that originally drafted the section B
version which passed the legislature with only one grammatical
modification.  In the article, the
members state that “[a]s a result of this change it is clear that a drop down
of assets by a corporation to a . . . master limited partnership would not be
an asset disposition requiring shareholder approval.  In effect no disposition of assets by a
corporation will require shareholder approval unless the corporation liquidates
and ceases to do business after the disposition.”  25 Bulletin
of the Section on Corporation, Banking & Business Law, State Bar of Texas
12 (September 1987).





[6]  The cited section of the Louisiana
statute governs voluntary transfers of corporate assets and provides as
follows:

 

Nothing in this section is intended
to restrict the power of any corporation, without authorization thereof by the
shareholders, to sell, lease, exchange or otherwise dispose of any of its
property if the entire corporate business is not ended thereby, or if some
portion of the proceeds of such property is appropriated to the conduct or
development of its remaining business.

 

La. Rev.
Stat. Ann. § 121 (E)
(West 1994). One published case under the
Louisiana provision deals with the transfer of assets from a corporation to a
partnership.  See Levy v. Billeaud,
443 So.2d 539 (La. 1984).  However, that
case is of little use here because it is so readily distinguishable.  The plaintiffs in Levy claimed that
(1) the directors and appointed liquidator breached their fiduciary duties and
(2) plaintiffs would have received no compensation for their shares if they
refused to join the partnership.  See
id. at 541, 544.  Here,
appellants make no breach of fiduciary duty claims, and it is undisputed that,
at a minimum, they are entitled to receive compensation for their shares under
the AWD Redemption Agreement.





[7]  It is
undisputed that all or substantially all of AWD’s assets were transferred to
HSAW.  It is also important to note that,
although the statute provides that a corporation can continue in business if it applies a portion of the
consideration received from the transaction to the conduct of a business in
which it engages following the transaction, the parties have, for the most
part, limited their arguments to whether AWD continued in the legal services
business after the combination.  Tex. Bus. Corp. Act  art. 5.09(B).  We shall therefore confine our
discussion to that context.





[8]  Appellants
point out that the number of AWD shareholders and employees has dwindled since
the combination and is unlikely to be replenished.  However, appellants make no arguments and
cite no authority, and we are aware of none, suggesting that these facts
prevent AWD from being a live corporation.





[9]  The HSAW
Partnership Agreement creates two levels of partnership; a Level II Partner has
greater voting and other partnership rights than does a Level I Partner.





[10]  Appellants
point out that AWD currently has no source of income other than what it
receives as a HSAW partner, does not service clients separately from HSAW, and
does not market itself as a separate firm. 
They further assert that all AWD shareholders now hold themselves out as
partners in HSAW.  However, appellants
again offer no explanation or authority regarding how these facts prevent AWD
from being a viable corporation in the legal services business.





[11]  As assets
required for the practice of law, appellants list cash, accounts receivable,
work-in-progress, leasehold interests, furniture, fixtures, and equipment.  However, despite the offices, computers,
software, fax machines, paper, pens, and pencils most lawyers use in their
practices, the only “asset” truly indispensable to continuing in the legal
services business is the lawyer him- or herself.  Post-combination, AWD continued to retain
attorneys as shareholders and employees and, as a HSAW partner, it indirectly
retained the services of many more.





[12]  Indeed, in
their Reply Brief, appellants assert that in the transaction AWD “received from
the new firm stock [sic] equal to the entire value of [AWD’s] assets.”





[13]  Article
5.12(G) specifically provides that, in the absence of fraud in the transaction,
the remedy of a dissenting shareholder under article 5.11 is the exclusive
remedy for the recovery of the value of his or her shares.  Tex. Bus. Corp. Act art. 5.12(G).





[14]  Absent
ambiguity, we interpret a contract as a matter of law.  DeWitt County Elec. Co‑op., Inc. v.
Parks, 1 S.W.3d 96, 100 (Tex. 1999). 
Appellants do not specifically contend that the Redemption Agreement is
ambiguous, nor do we so find.





[15]  In their
respective depositions, Stephen Rudisill testified that he stopped being an AWD
shareholder in January 2000 and that he has not been employed by AWD since that
time; Ronald Coolley testified that he was no longer an AWD employee as of
February 1, 2000; and Slawomir Szczepanski testified that he has not been
employed by AWD since either late January or early February 2000.





[16]  This fact is
discussed in greater detail in the next section of the opinion.





[17]  In her
affidavit, Peggy McQuaid, AWD’s administrative director, stated that AWD made
no distributions to shareholders between January 31, 2000, and October 31,
2002, the latter being the date the affidavit was signed.  In his deposition, Thomas Miller, as AWD’s
corporate representative, testified that AWD sold its ski condominiums in March
or April of 2000, and he believed the proceeds were distributed to shareholders
eight or nine months later.  He further
stated that AWD’s South Padre condominium was sold in the month preceding July
26, 2001 (the date of the deposition), that the proceeds had not been distributed,
and that he did not know if they would be. 
The record also contains a copy of an email from Miller, dated December
28, 2001, in which he states that the proceeds of the South Padre condominium,
which totaled under $20,000, were being distributed.





[18]  In their reply
brief, appellants assert that they are entitled to declaration of their rights
to “avoid another lawsuit, for example, if they are reinstated as shareholders
under Art. 5.13 and wish to terminate.” 
As we held above in regard to their second issue, appellants are not
entitled to reinstatement as shareholders. 
Furthermore, a theoretical dispute, such as that contemplated by
appellants, does not give rise to a justiciable controversy.  Bonham State Bank, 907 S.W.2d at 467.